UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOHN DOE,
    Plaintiff,

v.

THE FLORIDA BAR; ASHLEY MORRISON, in her official
and individual capacities as Bar Counsel for The Florida
Bar; JOSHUA E. DOYLE, in his official and individual
capacities as Executive Director of The Florida Bar,

    Defendants.

_____/

Case No. 6:26-cv-01481-JSS-RMN

**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE
RELIEF; CHALLENGE TO THE CONSTITUTIONALITY OF RULE
REGULATING THE FLORIDA BAR 3-7.18; DECLARATORY RELIEF
REQUESTED; PRELIMINARY AND PERMANENT INJUNCTIVE
RELIEF REQUESTED; AND DAMAGES**

Plaintiff John Doe, proceeding under pseudonym pursuant to the

contemporaneously filed Motion for Leave to Proceed Under Pseudonym and for

Protective Order under Local Rule 1.11, sues Defendants The Florida Bar, Ashley

Morrison, and Joshua E. Doyle, and alleges as follows:

# TABLE OF AUTHORITIES

## Cases

Anderson v. Celebrezze, 460 U.S. 780 (1983) — 17

Barry v. Barchi, 443 U.S. 55 (1979) — 15

Buckley v. Fitzsimmons, 509 U.S. 259 (1993) — 24, 29

Burdick v. Takushi, 504 U.S. 428 (1992) — 17

City of Houston v. Hill, 482 U.S. 451 (1987) — 9

Gibson v. Berryhill, 411 U.S. 564 (1973) — 13

Kugler v. Helfant, 421 U.S. 117 (1975) — 14

Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423 (1982) — 13

Smith v. Wade, 461 U.S. 30 (1983) — 26, 30

United States v. Georgia, 546 U.S. 151 (2006) — 20

Watson v. Buck, 313 U.S. 387 (1941) — 14

Younger v. Harris, 401 U.S. 37 (1971) — 13

## Statutes, Regulations, and Rules

42 U.S.C. § 1983 — 3, 4, 14, 15, 20, 23, 26, 28

42 U.S.C. § 1988 — 26, 28, 30, 31

42 U.S.C. § 12102 — 18

28 U.S.C. § 1331 — 4

28 U.S.C. §§ 2201–02 — 3, 4, 21

28 C.F.R. § 35.107 — 6, 19, 24, 27

28 C.F.R. § 35.164 — 25, 27

Fed. R. Civ. P. 65 — 4

R. Regulating Fla. Bar 3-7.18 (former) — 1, 4, 6, 7, 8, 14, 16, 20, 21, 31

M.D. Fla. Local Rule 1.11 — 1

**PRELIMINARY STATEMENT**

This is a civil rights action under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq., and 28 U.S.C. § 2201, arising from Defendants' retaliatory and discriminatory conduct in connection with attorney disciplinary proceedings initiated against Plaintiff, a Florida attorney and former judicial candidate, and from a retaliatory bar complaint filed against Plaintiff by a sworn law enforcement deputy, following Plaintiff's protected criticism of police conduct.

At bottom, this case concerns an arm of the state judiciary deploying its regulatory power over lawyers not to protect the public, but to protect the judiciary itself from criticism — suppressing the form of expression the First Amendment exists most centrally to protect: speech against government power.

The courts have historically granted state bars limited leeway to regulate commercial speech and protect the public from the stereotypical legal shyster. This case demonstrates what happens when that leeway metastasizes: within merely two election cycles of the Florida Supreme Court's 2021 adoption of a special preference for judicial referrals, the mechanism had been so visibly turned by incumbent judges against their electoral challengers that the Bar itself petitioned to repeal the preference for election-related grievances. Yet the Bar continues this

3

prosecution — stripped now of the codified preference of former Rule 3-7.18, Rules Regulating The Florida Bar, but not of its purpose.

Plaintiff seeks declaratory and injunctive relief against The Florida Bar, Ashley Morrison, and Joshua E. Doyle to halt an ongoing disciplinary prosecution that violates Plaintiff's First and Fourteenth Amendment rights, to compel The Florida Bar's compliance with Title II of the ADA, and to invalidate, facially and as applied, the elevated-review mechanism formerly codified at Rule Regulating The Florida Bar 3-7.18. Plaintiff also seeks compensatory and punitive damages against Defendants Morrison and Doyle, individually.

## JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and § 1343(a)(3)-(4), as this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983 and Title II of the ADA, 42 U.S.C. § 12131 et seq.

2. This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201-2202 and injunctive relief under Fed. R. Civ. P. 65.

3. Venue is proper in this District and Division under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in Orange County, Florida, within the Orlando Division of the Middle District

4

of Florida, and Defendant Morrison maintains her office at The Florida Bar's Orlando Branch Office, 1000 Legion Place, Suite 1625, Orlando, Florida 32801.

## PARTIES

4. Plaintiff John Doe is a natural person, a member in good standing of The Florida Bar, and an experienced Florida practitioner. Plaintiff was a candidate for Circuit Judge in a Florida judicial circuit. Plaintiff proceeds under pseudonym for the reasons set forth in the accompanying motion.

5. Defendant The Florida Bar ("the Bar") is an official arm of the Supreme Court of Florida, created pursuant to Article V, Section 15 of the Florida Constitution, responsible for the regulation and discipline of attorneys licensed in Florida, including the administration of accommodation procedures under Title II of the ADA.

6. Defendant Ashley Morrison is Bar Counsel for The Florida Bar's Orlando Branch. She is sued in her official capacity as to Counts I, II, III, and VI, and in her individual capacity as to Count VIII.

7. Defendant Joshua E. Doyle is the Executive Director of The Florida Bar. He is sued in his official capacity as to Counts IV and VII, and in his individual capacity as to Count IX. Doyle has administrative authority over Bar-wide

policy, including the designation of ADA coordinators and accommodation procedures under 28 C.F.R. § 35.107, and over the implementation of Rule 3-7.18, Rules Regulating The Florida Bar.

## FACTUAL BACKGROUND

### A. Plaintiff's Judicial Candidacy and the Resulting Bar Complaints

8. On June 1, 2023, Plaintiff announced his candidacy for Circuit Judge against a sitting incumbent circuit judge, referred to herein as "Plaintiff's Opponent" or "the Referring Judge."

9. During the campaign, Plaintiff engaged in protected political speech, including statements on social media and on his campaign website concerning Plaintiff's Opponent's record and fitness for office.

10. Following announcement of Plaintiff's candidacy, The Florida Bar received a series of complaints against Plaintiff arising directly from this protected campaign speech, including: (a) Bar File No. 2025-30,068(9B), a judicial referral from Plaintiff's Opponent alleging that Plaintiff's campaign social media and website posts violated Rules 4-8.2 and 4-8.4; (b) Bar File No. 2025-30,081(9B), filed by Plaintiff's Opponent's wife, alleging harassment through campaign-related social media posts and messages; and (c) Bar File No. 2025-30,015(9B), filed by Michele Bernard.

6

11. Bar File No. 2025-30,068(9B) expressly advised Plaintiff, by letter dated August 9, 2024, that the matter was "subject to review under Rule Regulating The Florida Bar 3-7.18" — meaning it was classified and processed as a judicial referral under that rule.

**B. Eligibility Requirements for Judicial Referrals Under Rule 3-7.18, Rules Regulating The Florida Bar**

12. Rule 3-7.18, Rules Regulating The Florida Bar, governs how the Bar handles complaints submitted by a member of the judiciary, designated as "judicial referrals."

13. As adopted in 2021, former Rule 3-7.18, Rules Regulating The Florida Bar, gave judicial referrals extraordinary procedural preference by its plain text: subdivision (b) suspended all ordinary disposition deadlines for judicial referrals; subdivision (c) prohibited any disposition — including a simple dismissal or finding of no probable cause — from becoming final without review by the Board of Governors; and subdivision (d)(2)(B)(ii) provided that the Supreme Court of Florida's rejection of a recommended disposition "will be deemed a finding of probable cause and direction to the bar to file a formal complaint." No complaint from any other source received this treatment. Under the former rule, an ordinary citizen's complaint could be

dismissed by bar staff, while a judge's complaint against his own electoral challenger could not be dismissed at any level without the approval of the Board of Governors and the Supreme Court of Florida — the same court empowered by the rule to unilaterally direct the challenger's prosecution.

14. By opinion dated August 28, 2025, the Florida Supreme Court amended the definition of "judicial referral" in Rule 3-7.18, Rules Regulating The Florida Bar, of "judicial referral," effective October 27, 2025, to (a) exclude election-related complaints from that classification, and (b) require that the referring judge have obtained the underlying information during the course of official judicial duties. See In re: Amendments to Rules Regulating The Florida Bar — Discipline Rules, No. SC2025-0019 (Fla. Aug. 28, 2025).

15. File No. 2025-30,068(9B) does not meet either requirement of the amended definition. It is, on its face, an allegation arising from Plaintiff's election campaign, and the Referring Judge's knowledge of the underlying conduct arose from his position as Plaintiff's electoral opponent, not from any judicial function. Nonetheless, the Bar's own internal notices and correspondence continue to describe and process File No. 2025-30,068(9B) as a judicial referral.

**C. A Law Enforcement Officer's Bar Complaint: Retaliation for Protected Speech Criticizing Police**

16. On March 2, 2025, Plaintiff called the Orange County Sheriff's Office for assistance after his then-partner took his vehicle without permission. Two deputies responded to the call.

17. During the encounter, Plaintiff made statements critical of the responding officers' conduct, including comments characterizing certain police behavior pejoratively (the "oinking"/"pigs" comment). Such criticism of police conduct, even when expressed through insulting or contemptuous language, is protected speech under the First Amendment and does not constitute "fighting words." See City of Houston v. Hill, 482 U.S. 451 (1987).

18. Following this encounter, one of the responding deputies filed a complaint against Plaintiff with The Florida Bar, docketed as Bar File No. 2025-30,580(9B), naming himself as complainant.

19. That complaint was causally connected to Plaintiff's protected criticism of the officers' conduct during the encounter described above, and was filed in retaliation for that protected speech.

20. During the same encounter, one of the responding deputies transported and counseled the individual against whom Plaintiff had sought police

9

protection, rather than assisting Plaintiff, providing further evidence of the officers' bias in favor of the aggressor and against Plaintiff.

## D. The Bar's ADA Accommodation Process and Its Denial as to Plaintiff

21. The Florida Bar maintains published accommodation procedures for individuals filing complaints against attorneys, but maintains no published ADA coordinator, no named contact, and no comparable grievance procedure for attorneys who are respondents in disciplinary proceedings.

22. On April 30, 2026, Plaintiff requested a reasonable accommodation to participate in the grievance process, which Plaintiff had avoided requesting earlier due to concerns about Bar Counsel's conduct and fear of retribution.

23. Plaintiff requested the identity of the ADA coordinator from Bar Counsel and did not receive a response. Plaintiff sent the request to Morrison and the chairman of the Grievance Committee.

24. After continuing the Grievance Committee matter on a separate request, Defendant Morrison emailed Plaintiff seeking a "letter from a doctor" to support Plaintiff's request. Plaintiff arranged for his mental health provider to contact the Bar.

25. By email dated June 1, 2026, without any interactive process, Morrison unilaterally substituted a video-recording option for the accommodation

Plaintiff had requested. The substitution was not communicated as an accommodation at all: it appeared as a single provision embedded in an amended notice of grievance committee review sent for a different purpose, made no reference to Plaintiff's ADA request or to the ADA, provided no explanation for the substitution, and was accompanied by no provision of video-recording services, equipment, or assistance of any kind. Plaintiff had no reason to understand — and did not understand — that the provision was intended as the Bar's response to his accommodation request.

26. The Bar's failure to designate a published ADA coordinator or to provide a respondent-side accommodation procedure, while maintaining such procedures for complainants, constitutes a structural policy of disparate treatment redressable under Title II of the ADA.

## E. Morrison's Sworn-Statement Questioning of Plaintiff's Future Political Activity

27. On February 26, 2025, Morrison personally conducted a sworn statement of Plaintiff in connection with Bar Files Nos. 2025-30,015(9B), 2025-30,068(9B), 2025-30,081(9B), and 2025-30,336(9B). Sworn Statement of Plaintiff, Feb. 26, 2025, p. 1 (filed under seal or available upon request subject to the protective order sought herewith).

11

28. Early in her direct examination, after establishing that this was Plaintiff's first judicial campaign, Morrison asked: "So you don't have any intent to run again?" Plaintiff responded: "Absolutely not. It was a very -- well. I won't add that commentary to the record." Id. at pp. 12:8-13.

29. Later in the same examination, Morrison asked Plaintiff whether he had formed the "oversight committee" about judges that he had referenced online, and, upon learning he had not yet done so, asked what its purpose would be. Plaintiff explained it would be "a political committee" to "inform the public about judges" and promote "transparency with the Court." Id. at pp. 135:21-136:19.

30. Neither inquiry — whether Plaintiff intended to seek judicial office again, or whether and why he intended to form a future political advocacy organization — bears on whether Plaintiff committed the past misconduct alleged in the referred complaints. Both inquiries probe Plaintiff's intended future protected political activity.

31. Following the February 26, 2025 sworn statement, Plaintiff complained to the Bar that Bar counsel's examination had employed leading questions premised on materially false facts. To Plaintiff's knowledge, those false premises have never been corrected on the record, and the Bar took no action against its counsel.

32. On March 24, 2025, the Bar noticed a second sworn statement session at which Plaintiff's testimony could have been completed. On May 6, 2025 — after Plaintiff's complaint regarding Bar counsel's examination — the Bar cancelled that session. Plaintiff's sworn statement remains incomplete, and the Bar now presents the truncated transcript to the grievance committee as a centerpiece of its file.

## F. Abstention Is Not Warranted

33. Plaintiff anticipates that Defendants will urge abstention under Younger v. Harris, 401 U.S. 37 (1971), and Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423 (1982). Abstention is inappropriate here for at least three independent reasons: (a) the underlying proceeding was brought and maintained in bad faith and for purposes of harassment and retaliation, as alleged throughout this Complaint, Younger, 401 U.S. at 49; (b) the state forum is structurally inadequate because the Supreme Court of Florida authored the challenged rule, its official arm enforces it, the same court serves as the sole reviewing authority, and under former Rule 3-7.18(d)(2)(B)(ii), Rules Regulating The Florida Bar, that court was itself empowered to direct the filing of a formal complaint against Plaintiff by rejecting a recommended dismissal, Gibson v. Berryhill, 411 U.S. 564, 577

(1973); and (c) the continued application of former Rule 3-7.18, Rules Regulating The Florida Bar, to election-related complaints — after the rule was amended to eliminate precisely that application — renders the rule flagrantly and patently violative of constitutional limitations as applied, Younger, 401 U.S. at 53-54 (quoting Watson v. Buck, 313 U.S. 387, 402 (1941)), and presents the extraordinary circumstances warranting federal intervention, Kugler v. Helfant, 421 U.S. 117, 124-25 (1975).

## CAUSES OF ACTION

## COUNT I

### 42 U.S.C. § 1983 — First Amendment Retaliation

*(Against Defendant Morrison, Official Capacity — Injunctive Relief Only)*

34. Plaintiff realleges Paragraphs 1-25 as if fully set forth herein.

35. Plaintiff's campaign-related speech described above is protected by the First Amendment.

36. Defendant Morrison's continued prosecution of disciplinary complaints arising from that protected speech constitutes an adverse action taken because of, and in retaliation for, the exercise of protected First Amendment rights.

37. Plaintiff has no adequate remedy at law and will suffer irreparable harm absent injunctive relief enjoining the continued prosecution.

38. Plaintiff seeks only prospective injunctive relief against Morrison in her official capacity; this count does not seek damages.

## COUNT II

### 42 U.S.C. § 1983 — Procedural Due Process

*(Against Defendant Morrison, Official Capacity — Injunctive Relief Only)*

39. Plaintiff realleges Paragraphs 1-25 as if fully set forth herein.

40. Plaintiff has a protected property interest in his license to practice law. Barry v. Barchi, 443 U.S. 55 (1979).

41. The truncation of Plaintiff's sworn statement without an opportunity to complete his testimony, combined with the denial of Plaintiff's requested accommodation without interactive process, deprived Plaintiff of adequate process before deprivation of that protected interest could occur.

42. Plaintiff seeks only prospective injunctive relief against Morrison in her official capacity.

## COUNT III

### 42 U.S.C. § 1983 — Equal Protection / Selective Enforcement

*(Against Defendant Morrison, Official Capacity — Injunctive Relief Only)*

43. Plaintiff realleges Paragraphs 1-25 as if fully set forth herein.

44. Defendants treat disciplinary complaints arising from judicial campaign speech differently from, and more severely than, similarly situated complaints not arising from judicial campaigns, including by classifying and processing such complaints as judicial referrals under Rule 3-7.18, Rules Regulating The Florida Bar.

45. This differential and more severe treatment is further underscored by comparison to the confidentiality and review framework governing complaints against sitting judges themselves under the Judicial Qualifications Commission ("JQC"), a co-equal state disciplinary body. Whereas the JQC's own proceedings remain confidential unless and until probable cause is found and formal charges are filed, see Article V, Section 12(d), Fla. Const., campaign-speech complaints against attorney candidates such as Plaintiff are processed through an accelerated, judicially-favored referral track with no comparable protection, resulting in attorneys facing harsher and more exposed treatment for campaign speech than judges themselves face for analogous conduct.

46. This double standard is illustrated by comparison to Inquiry Concerning a Judge, JQC Nos. 2022-429, 2022-461 & 2022-502, re: Mardi Levey Cohen,

16

__ So.3d __ (Fla., No. SC2024-0992, 5/8/2025), in which the JQC investigated and disciplined a sitting circuit judge for spreading negative, disparaging information about her opponent, attorney Kaysia Earley, during their 2022 judicial campaign. By contrast, during Plaintiff's own campaign, Plaintiff's Opponent's wife and campaign committee member disseminated false and disparaging information to third parties concerning Plaintiff's personal marital circumstances, and Plaintiff's Opponent has faced no JQC discipline or comparable consequence for this conduct, despite Plaintiff having brought it to the JQC's attention. This disparity in outcomes for functionally identical conduct — negative campaign gossip about an opponent — further illustrates that the Bar and JQC apply a double standard favoring incumbent judges over the attorney candidates who challenge them.

47. This differential treatment burdens core political speech in the context of a judicial election. Under the sliding-scale framework set forth in Anderson v. Celebrezze, 460 U.S. 780 (1983), and Burdick v. Takushi, 504 U.S. 428 (1992), severe burdens on core political speech in the electoral context trigger strict scrutiny, while only reasonable, nondiscriminatory restrictions are evaluated against the state's asserted regulatory interests. The selective, harsher processing of campaign-speech complaints — as opposed to the ordinary, confidential complaint process applied to non-campaign conduct

17

— constitutes a severe burden on Plaintiff's core political speech that is not justified by any content-neutral regulatory interest the Bar has articulated.

48. Plaintiff seeks an injunction enjoining Defendant Morrison from classifying, processing, or continuing to prosecute Plaintiff's campaign-speech-related complaints, including File No. 2025-30,068(9B), under any process more severe than, or distinct from, the process applied to non-campaign-related complaints against similarly situated attorneys.

## COUNT IV

**Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq.**

*(Against Defendants The Florida Bar and Doyle, Official Capacity — Injunctive Relief and Compensatory Damages Against The Florida Bar)*

49. Plaintiff realleges Paragraphs 1-25 as if fully set forth herein.

50. The Florida Bar is a public entity within the meaning of 42 U.S.C. § 12131(1).

51. Plaintiff is an adult living with autism (ALWA). Autism is a neurological condition that qualifies as a disability under the definition set forth in the ADA, 42 U.S.C. § 12102(1)-(2), and Plaintiff is therefore a qualified individual with a disability within the meaning of 42 U.S.C. § 12131(2).

18

52. The Bar's failure to designate a published ADA coordinator and grievance procedure for attorney respondents, as required by 28 C.F.R. § 35.107, while maintaining such procedures for complainants, and its denial of Plaintiff's accommodation request without any interactive process, violated Title II of the ADA.

53. The Bar's violations were the product of deliberate indifference by officials with authority to address the discrimination: Executive Director Doyle received actual written notice of the violations on June 17, 2026, and took no corrective action, and the Bar as an institution failed to establish the coordinator designation and grievance procedures that 28 C.F.R. § 35.107 has required of every covered public entity for decades. Under Liese v. Indian River County Hospital District, 701 F.3d 334, 344-49 (11th Cir. 2012), such deliberate indifference by officials with authority to act supports an award of compensatory damages against the public entity itself — liability that arises from the entity's own institutional failures and its responsible officials' knowing inaction, not from any theory of respondeat superior.

54. The Bar's Eleventh Amendment immunity is abrogated as to this count because the same conduct that violates Title II also violates the Fourteenth

Amendment, as alleged in Counts II, III, and VI. United States v. Georgia, 546 U.S. 151, 159 (2006).

55. Plaintiff seeks an injunction requiring the Bar to designate and publish an ADA coordinator, adopt a published grievance procedure for attorney respondents, and engage in an interactive process as to Plaintiff's pending request, together with compensatory damages against The Florida Bar for its deliberate indifference.

## COUNT V

**42 U.S.C. § 1983 — Equal Protection — Elevated Review Track Under Former Rule 3-7.18, Rules Regulating The Florida Bar**

*(Against Defendant Morrison, Official Capacity — Injunctive Relief Only)*

56. Plaintiff realleges Paragraphs 1-25 as if fully set forth herein.

57. Rule 3-7.18, Rules Regulating The Florida Bar, governed the classification of judicial referrals until amended by the Florida Supreme Court on August 28, 2025, effective October 27, 2025, to (a) exclude election-related complaints from that classification, and (b) require that the referring judge have obtained the underlying information during the course of official

20

judicial duties. See In re: Amendments to Rules Regulating The Florida Bar — Discipline Rules, No. SC2025-0019 (Fla. Aug. 28, 2025).

58. File No. 2025-30,068(9B) independently fails both of these requirements: it concerns election-related conduct, and it rests on information related to the Referring Judge's political campaign only.

59. Continuing to classify and process Plaintiff's election-related complaint as a judicial referral after the amendment denies Plaintiff the equal protection of the law as compared to similarly situated respondents whose election-related complaints no longer qualify for that classification.

60. Plaintiff seeks only prospective injunctive relief against Morrison in her official capacity.

## COUNT VI

**Declaratory Judgment, 28 U.S.C. § 2201 — Facial and As-Applied Challenge to Former Rule 3-7.18, Rules Regulating The Florida Bar**

*(Against Defendants The Florida Bar and Doyle, Official Capacity)*

61. Plaintiff realleges Paragraphs 1-25 as if fully set forth herein.

62. Facially, former Rule 3-7.18, Rules Regulating The Florida Bar's automatic elevated-review mechanism for judicial referrals — including, prior to the 2024-2025 amendment, election-related complaints — imposed a content-

21

and speaker-based burden on protected political speech because the rule singled out complaints originating from a member of the judiciary, including a judge who was himself the attorney-respondent's electoral opponent, for an automatic, expedited elevated-review track not available to complaints from non-judicial sources. This mechanism afforded the complaint of a sitting judge against his own political rival greater procedural weight than an ordinary bar complaint receives, without any content-neutral justification for that differential treatment and without sufficient tailoring to a legitimate regulatory interest.

63. As applied to Plaintiff, continuing to treat File No. 2025-30,068(9B) as a judicial referral after the amendment was unconstitutional for two independent reasons: first, the amendment's express purpose — eliminating exactly this application to election-related complaints — confirms that classifying Plaintiff's complaint this way serves no legitimate purpose the amendment itself did not already repudiate; and second, the referral never satisfied the amended rule's separate requirement that the referring judicial officer have obtained the underlying information in the course of official duties, since the Referring Judge's knowledge of Plaintiff's campaign conduct arose from his position as Plaintiff's electoral opponent, not from any judicial function.

22

64. The Bar's own rulemaking history confirms that this abuse was neither speculative nor unique to Plaintiff's case. The January 3, 2025 petition sponsoring the amendment expressly acknowledged that "the bar has received referrals from judges regarding opponents in judicial elections," and that in such circumstances the referring judge may be seen to have a personal interest in the matter. Fla. Bar News, Supreme Court Narrows Scope of Judicial Referrals in Bar Complaints (Sept. 3, 2025). The Bar and the Florida Supreme Court thus recognized, before this action was filed, that the very mechanism used against Plaintiff was being used by sitting judges against their own electoral opponents, and amended the rule for that reason — confirming that File No. 2025-30,068(9B) is a paradigm case of the abuse the amendment was designed to end.

65. An actual, justiciable controversy exists between the parties as to the constitutionality of the former rule's application to Plaintiff, and a declaratory judgment will resolve that controversy.

## COUNT VII

### 42 U.S.C. § 1983 — Disability Discrimination / ADA Violation

*(Against Defendant Morrison, Individual Capacity — Damages)*

66. Plaintiff realleges Paragraphs 1-25 as if fully set forth herein.

23

67. On February 26, 2025, Defendant Morrison personally conducted a sworn statement of Plaintiff. During this sworn statement, Morrison posed questions regarding Plaintiff's future political activity — specifically, whether Plaintiff intended to run for judicial office again and whether Plaintiff intended to form a political committee — that bear no relation to any disciplinary investigation and serve no legitimate Bar function.

68. These questions constitute investigative conduct, not prosecutorial advocacy, and therefore subject Morrison to qualified immunity rather than absolute immunity. Buckley v. Fitzsimmons, 509 U.S. 259 (1993).

69. On April 30, 2026, Plaintiff submitted a formal ADA accommodation request pursuant to Title II of the Americans with Disabilities Act, identifying his autism spectrum disorder and requesting a 30-day extension and in-person appearance before the Grievance Committee to ensure effective participation.

70. On June 1, 2026, without any interactive process as required by 28 C.F.R. § 35.107, Morrison unilaterally substituted a video recording accommodation for the accommodation Plaintiff requested. Morrison did not explain her reasoning, did not engage in consultation, and did not provide any written response identifying her as the decision-maker or referencing Plaintiff's ADA request. The notification arrived as a one-line email from a secretary

24

stating only "thank you" with an attached notice of a Grievance Committee meeting.

71. Plaintiff explicitly cited federal regulations requiring an interactive consultative process, asked Morrison whether Executive Director Doyle had authorized the denial, and requested information about who should handle ADA compliance matters. Morrison never responded to these inquiries.

72. This denial, made without interactive process and without authorization from the agency head or designee as required by 28 C.F.R. § 35.164, violated Plaintiff's rights under Title II of the ADA.

73. Morrison's conduct — posing irrelevant political questions at a compelled deposition and denying a disability accommodation without due process — constitutes retaliation against Plaintiff for asserting rights under the ADA and violates clearly established law. Qualified immunity does not shield such conduct.

74. As a direct and proximate result of Morrison's discriminatory conduct, Plaintiff has suffered damages including but not limited to emotional distress sustained over the nearly two-year pendency of this matter, loss of ability to participate effectively in his defense, impairment of his right to equal access to Bar proceedings, and a documented erosion of Plaintiff's professional

confidence in the courtroom that has, in turn, affected the quality of representation Plaintiff is able to provide to his own clients.

75. Morrison's conduct was undertaken with reckless or callous indifference to Plaintiff's federally protected rights, and with actual knowledge that her conduct violated those rights, entitling Plaintiff to punitive damages. Smith v. Wade, 461 U.S. 30, 56 (1983).

76. Plaintiff seeks compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1988.

## COUNT VIII

### 42 U.S.C. § 1983 — Deliberate Indifference to Known ADA Violations

*(Against Defendant Doyle, Individual Capacity — Damages)*

77. Plaintiff realleges Paragraphs 1-25 and the allegations of Count VIII as if fully set forth herein.

78. On June 17, 2026, Plaintiff sent an email to Executive Director Joshua E. Doyle at jdoyle@floridabar.org detailing the ADA accommodation denial, citing specific DOJ Title II regulations, identifying Morrison's conflicts of interest (serving as both prosecutor and ADA coordinator), and requesting that Doyle review the matter and respond within 24 hours.

26

79. Doyle received actual notice that the Bar's ADA accommodation process violated federal law, that the decision-maker (Morrison) lacked authority under 28 C.F.R. § 35.164 (which requires authorization by the agency head or designee), and that Plaintiff was requesting immediate remediation.

80. Doyle is the Executive Director of The Florida Bar and bears statutory responsibility under 28 C.F.R. § 35.107 for designating an ADA coordinator, maintaining an accessible grievance procedure, and ensuring compliance with Title II's interactive process requirement.

81. Despite receiving Plaintiff's email, Doyle took no action to cure the ADA violation, engage in an interactive process, or even acknowledge receipt of the complaint. He did not review Morrison's denial, did not ensure that an independent ADA coordinator reviewed the request, and did not respond to Plaintiff's explicit 24-hour request for remediation.

82. Doyle's deliberate indifference to known ADA violations — receiving actual notice and failing to act — constitutes an independent violation of Plaintiff's Title II rights and a deprivation of Plaintiff's liberty interest in equal access to administrative proceedings.

83. Doyle's failure to act, after receiving actual notice of non-compliance, constitutes a violation of clearly established law under the ADA and the due process clause of the Fourteenth Amendment.

84. As a direct and proximate result of Doyle's deliberate indifference, Plaintiff has suffered damages as described in Count VIII.

85. Plaintiff seeks compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1988.


## COUNT IX

### 42 U.S.C. § 1983 — First Amendment Retaliation

*(Against Defendant Morrison, Individual Capacity — Damages)*

86. Plaintiff realleges Paragraphs 1-25 as if fully set forth herein.

87. Plaintiff's campaign-related speech, and his exercise of federal rights under the ADA in connection with the disciplinary proceeding, are protected activity under the First Amendment.

88. Morrison's February 26, 2025 questioning of Plaintiff regarding his intent to run for judicial office again and to form a political oversight committee, followed by her issuance of a grievance committee notice on April 17, 2026 — the Friday immediately preceding the April 20-24, 2026 judicial qualifying week — constitutes an adverse action taken in retaliation for Plaintiff's protected speech and anticipated future political activity.

89. The fourteen-month gap between Morrison's February 2025 questioning and the April 2026 notice, combined with the notice's precise timing on the eve

28

of qualifying week, is circumstantial evidence that Morrison's conduct was calculated to deter Plaintiff from qualifying to run again — an adverse action that would deter a person of ordinary firmness from engaging in protected speech and protected political candidacy.

90. This retaliatory timing is further underscored by the nearly two-year gap between the 2024 judicial election and the April 17, 2026 notice: the Bar took no action of comparable consequence against Plaintiff for approximately two years following the initial complaints, only to notify Plaintiff — on the Friday immediately preceding qualifying week — that the matter was being escalated to General Counsel, at the precise moment such notice would most effectively intimidate Plaintiff from qualifying to run again.

91. Morrison's conduct in personally posing these retaliatory questions was investigative rather than prosecutorial in function, and therefore subject only to qualified immunity, which is defeated here because Morrison's questions had no relevance to any legitimate disciplinary purpose and violated clearly established First Amendment protections for political candidacy and speech. Buckley v. Fitzsimmons, 509 U.S. 259 (1993).

92. Morrison's retaliatory timing achieved its intended effect: Plaintiff did not qualify to run again in the 2026 judicial election, meaning Defendants

29

succeeded in using the threat of disciplinary prosecution to remove Plaintiff from electoral competition. This demonstrated success confirms both the seriousness of the retaliatory scheme and the necessity of immediate judicial intervention, since Defendants retain the same tools and the same demonstrated willingness to use them against Plaintiff's candidacy in any future election cycle absent injunctive relief.

93. As a direct and proximate result of Morrison's retaliatory conduct, Plaintiff did not qualify to run again in the 2026 election and has suffered damages including but not limited to the loss of his candidacy, sustained emotional distress over the nearly two-year pendency of the underlying prosecution, reputational harm, and a documented erosion of Plaintiff's professional confidence in the courtroom that has, in turn, affected the quality of representation Plaintiff is able to provide to his own clients.

94. Morrison's conduct was undertaken with reckless or callous indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages. Smith v. Wade, 461 U.S. 30, 56 (1983).

95. Plaintiff seeks compensatory damages, punitive damages, and attorney's fees and costs pursuant to 42 U.S.C. § 1988.

**PRAYER FOR RELIEF**

30

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Enter a declaratory judgment that Defendants' conduct as alleged herein violates the First and Fourteenth Amendments and Title II of the ADA;

(b) Enter a declaratory judgment that former Rule Regulating The Florida Bar 3-7.18 is unconstitutional, facially and as applied to Plaintiff;

(c) Enter preliminary and permanent injunctive relief enjoining Defendants Morrison and the Bar from continuing to classify or process the disciplinary matters described herein as a judicial referral under Rule 3-7.18, Rules Regulating The Florida Bar, and requiring the Bar and Doyle to designate a published ADA coordinator and adopt an interactive accommodation process for attorney respondents;

(d) Award Plaintiff compensatory damages against Defendant The Florida Bar under Title II of the ADA for its deliberate indifference, in an amount to be determined at trial;

(e) Award Plaintiff compensatory and punitive damages against Defendant Morrison, individually, in an amount to be determined at trial;

(f) Award Plaintiff compensatory and punitive damages against Defendant Doyle, individually, in an amount to be determined at trial;

(h) Award Plaintiff reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1920; and

31

(i)  Grant such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable, including Counts V, VIII, IX, and X.

Dated: July 10, 2026

Respectfully submitted,

/s/ John Doe

John Doe, Plaintiff, Pro Se