**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

STEPHEN CHRISTOPHER BROWN,
*Plaintiff,*
v.
THE FLORIDA BAR; ASHLEY MORRISON, in her official and individual capacities; JOSHUA E. DOYLE, in his official and individual capacities; GYPSY BAILEY, in her official and individual capacities; and JOHN/JANE DOE(S), unknown official(s) of The Florida Bar, in their official and individual capacities,
*Defendants.*
_______________________________/

Case No. 6:26-cv-01481-AGM-RMN

**PLAINTIFF'S MOTION FOR DISQUALIFICATION UNDER 28 U.S.C. § 455(A)**

Plaintiff moves under 28 U.S.C. § 455(a) and (b)(1) for the disqualification of the presiding judge, District Judge Anne-Leigh Gaylord Moe, and for reassignment of this action.

**RELIEF REQUESTED**

I ask that Judge Moe disqualify herself under 28 U.S.C. § 455(a) and (b)(1) and that this action be reassigned. I will separately move under Rule 59(e) to alter or amend the October 13 order that closed this case (Doc. 52). The judge who receives this case should decide that motion. I reserve any relief from prior orders available under *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988).

## STANDARD

A judge must grant disqualification "in any proceeding in which [] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The question is not what the judge thinks of herself. It is whether "an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988) (quoting *Potashnick v. Port City Construction Co.*, 609 F.2d 1101, 1111 (5th Cir. 1980)). Actual bias is not required. *Liljeberg*, 486 U.S. at 859–60.

Opinions a judge forms in the case support disqualification when they show "deep-seated favoritism or antagonism." No outside source is required. *Liteky v. United States*, 510 U.S. 540, 554–56 (1994). This motion is not about any ruling of the Court. This motion is about three things: a judge who did not disclose that she once chaired a grievance committee of The Florida Bar; the words the judge has chosen while ruling; and when the judge has chosen to rule, and not to rule, at all.

## GROUNDS

### A. Undisclosed prior service in the defendant institution's grievance system.

I have another case before Judge Moe, *Brown v. Tarbert*, No. 6:26-cv-01466. Judge Moe chaired The Florida Bar's Grievance Committee 13-C. Thirteenth Judicial Circuit, Judicial Directory, Anne-Leigh Gaylord Moe. This case is against The Florida Bar, its Bar Counsel, its Executive Director, and its General Counsel.

The related case is against the Bar's head of lawyer regulation. Both are about how the Bar's grievance process has been run against me. She has not disclosed her committee service in either case. Which committee she chaired does not matter, because the people I am suing run the whole system, every committee included. A judge whose impartiality might be questioned has one way to keep the case. She must disclose the basis and let the parties agree that she stay. Code of Conduct for United States Judges, Canon 3D. "The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible," and a "full disclosure . . . would have completely removed any basis for questioning the judge's impartiality." *Liljeberg*, 486 U.S. at 865–66. She closed my case over a disclosure form. She never made this disclosure. I found it myself.

This is not a small thing. A litigant has no reason to suspect that the federal judge assigned to his case once chaired a grievance committee of the very institution he is suing. He should not have to assume it does not matter. I had a right to be told. The service matters for a second reason. This case asks whether the Bar's grievance procedures were run lawfully against me. Judge Moe applied those procedures as chair. To rule for me, she would have to find that the procedures she herself followed are not fail-safe, and that they produced what happened here. A judge should not be the one to decide whether a system she helped run makes mistakes.

**B. The August 11 order recited the record as if the Defendants had proposed it, and the slant can be measured.**

The August 11 order (Doc. 32) does not invent facts. It selects them. Every fact in the order is in the record, and I checked each one. Selection, unlike bias, can be measured. That measurement is the center of this motion, because it removes the gray areas. It states facts, not feelings. Anyone can see its basis and reproduce it.

I made the measurement with the assistance of artificial intelligence. I used it as a computing and pattern-matching tool, which is its proper use. For this audit, I did not use it as a chat, research, or drafting window. I took every discrete factual assertion in the August 11 order. I also took every discrete factual assertion in the three filings the order reviewed (Docs. 8, 9, and 13). Each one was classified as favorable to me, unfavorable to me, or neutral, from the standpoint of a neutral reader, under a written guideline applied in separate passes. The model used was Claude Fable 5 (Anthropic). I selected it for this task after reviewing published evaluations of available models, not by default. The workbook with every row, and a declaration describing the guideline, are Exhibit A. Anyone, including the Court and Defendants, can re-run it from the same rows.

My filings contain 2,315 discrete facts. Of those, 59.1% are favorable to me, 8.0% unfavorable, and 32.9% neutral. The order recites 43 facts. Of those, 11.6% are favorable, 60.5% unfavorable, and 27.9% neutral. The judge chose unfavorable facts at 760% of their actual rate in the record. Several of the unfavorable facts she chose were quotations of the Defendants' documents, which I included for context. The order presented them as my factual allegations.

Chance does not explain that result. If 43 facts were pulled at random from those filings, about 3.4 of them would be unfavorable. The order has 26. The probability of drawing 26 or more unfavorable facts out of 43, from a record that is 8.0% unfavorable, is roughly 3 in 1,000,000,000,000,000,000. That is three in a quintillion ($3 \times 10^{-18}$). Suppose my coding were badly wrong, and every fact were re-scored against me until the record read 15% unfavorable, nearly double. The odds would still be about 1 in 100,000,000,000. One in a hundred billion is the generous number.

Suppose a fresh set of 43 facts were drawn at random from my filings once every second. A set as unfavorable as the order's would be expected to come up once in about 9.7 billion years. The universe is 13.8 billion years old. Chance did not write this order. This probability is far less than DNA probabilities that have been used to support a death sentence. *See, e.g.*, *Everett v. Sec'y, Fla. Dep't of Corr.*, 779 F.3d 1212, 1224 (11th Cir. 2015) (approving death sentence using DNA with a frequency of one in 15.1 quadrillion).

Relevance does not explain it either. The order dismissed the complaint under Rules 8 and 10 and denied two TRO motions. Those rulings turn on how long and how organized a pleading is, and on the fact that the motions exist. Of the 43 facts the order recites, eight go to those questions. They are that two motions were filed and what they asked for, the ruling date I requested, the paragraph, page, and count figures, and the Court's description of the pleading. Exhibit A, rows 21–27 and 43. Fifteen more are offered as examples of "extraneous detail". They are three episodes lifted from the pleading. Rows 28–

42. The remaining twenty include that my campaign was "unsuccessful," that my conduct "resulted in" seven Bar complaints, and the fourteen accusations the Bar made against me, numbered one through fourteen, separated from my fourteen defenses. Rows 1–20. None of those twenty has anything to do with Rule 8, Rule 10, or a TRO. A court deciding whether a complaint is too long does not need to know what its author is accused of. Sixteen of the order's 26 unfavorable facts are in those twenty. Twenty-four of the 26 are in the thirty-five facts the ruling never needed. Relevance did not pick these facts. Relevance would have left most of them out.

The order also reprinted the fourteen accusations without their answers. I pleaded nearly every accusation next to the specific fact that refutes it. That is how a complaint like this has to be written. In twelve of the fourteen, the order kept the accusation and dropped the refutation that sat beside it. Rows 7–20. The answer to an accusation is no less relevant than the accusation, particularly when the accuser-defendants have not pled a word. For each separated pair the judge chose, neither half was relevant to Rule 8. Selecting by relevance does not take one half of a matched pair twelve times out of fourteen. Selecting by direction does.

| **Order's item** | **Accusation** | **My answer, pleaded at** | **Did the order keep my answer?** |
|---|---|---|---|
| (1) | social-media posts about the judge | ¶¶ 44–49 | No |
| (2) | comments about a paralegal | ¶¶ 75, 109–112 | No |
| (3) | a "discreet meeting" | ¶¶ 130–136 | Reframed |
| (4) | emails to opposing counsel | ¶¶ 208–217 | No |
| (5) | a deposition | ¶¶ 218–230 | No |

| Order's item | Accusation | My answer, pleaded at | Did the order keep my answer? |
|---|---|---|---|
| (6) | staring at a complainant | ¶¶ 76–80 | No |
| (7) | statements about the judge's wife | ¶¶ 138, 149–151 | No |
| (8) | views on public policy | ¶¶ 141–147 | No; kept only the caveat |
| (9) | contacting the opponent's supporters | ¶¶ 63–67 | No |
| (10) | the "pose" comparison | ¶¶ 148, 150–151 | No |
| (11) | "lost faith in the court system" | ¶¶ 153–160, 166 | Reframed |
| (12) | the deputy | ¶¶ 244–264 | No |
| (13) | campaign signs | ¶¶ 69–72 | No |
| (14) | the Facebook page | ¶¶ 73–74 | No |
| | | **Answer dropped:** | **12 of 14** |

Exhibit A, rows 7–20.

Exhibit E (Text message screenshots). The text messages attached as Exhibit E show Tiffaney McCarthy, wife of Ninth Judicial Circuit Judge Craig McCarthy, asking a disgruntled former friend of Plaintiff, who was using a fake name and told her so, for information about Plaintiff, and then inviting him to meet with the judge to give them more. Twice in those messages, Mrs. McCarthy assures him of discretion. When Plaintiff mentioned this online, the judge took it as Plaintiff making it up. The Bar says Plaintiff harmed the integrity of the judiciary. The integrity of the judiciary was blemished the moment these messages were exchanged. Plaintiff gave only a historical account of fact.

The fourteen accusations are the Bar's words, not mine, and my complaint said so. I quoted the Bar's charging language — "disparaging," "harassed," "unprofessional" — so the Court could see what I was charged with. ¶¶ 63, 113, 187, 199. I could not plead that the Bar is punishing my speech without saying

what the speech was and what the Bar charged. I then said in one sentence whose language it was: "The characterizations set forth in Paragraphs 63 and 113, 144, 158, 193, 195, and 205 supra are the Bar's." ¶ 232. I also pleaded that no rule the Bar cites even defines "disparaging" or "unprofessional." ¶¶ 300–302. The order kept the words and left out the sentence that said whose they were.

Exhibit B sets out nineteen statements from the order. Six of them are in the table below. The left column is the order's words. The right column is what I pleaded on the same point, copied from the complaint, including what the order cut. The middle column is what the Defendants had said. It is blank, because no defendant had appeared or filed anything. The judge wrote this order with only my filings in front of her, and she chose the Defendants' words.

| **What the order says** | **What Defendants had asserted of record when the order was written** | **What I pleaded, copied and pasted, including what the order cut** |
|---|---|---|
| "(7) made statements about the wife of the sitting judge he ran against"<br>*Doc. 32 at 2.* | | **¶ 138:** "Bar File C was filed by the wife of Judge-Opponent."<br>**¶¶ 149–150:** "The complainant in Bar File C is not a judge, a judicial officer, or a candidate for judicial office. The complainant filmed Plaintiff from the back of the room at a public campaign event."<br>**¶ 151:** "The pose Plaintiff's statement compared was the complainant's own posture at that event: standing and holding a camera extended above her head to film Plaintiff while Plaintiff |

| | | |
|---|---|---|
| | | spoke, and while other attendees sat.” |
| “(10) compared a female’s pose to that ‘of a popular musician’”<br>*Doc. 32 at 2.* | | **¶ 148:** “Another statement at issue compared conduct Plaintiff observed to a pose of a popular musician. The complaint does not explain what renders that comparison misconduct.”<br>**¶ 151:** “The pose Plaintiff’s statement compared was the complainant’s own posture at that event: standing and holding a camera extended above her head to film Plaintiff while Plaintiff spoke, and while other attendees sat.” |
| “(11) announced that ‘he had lost faith in the court system’”<br>*Doc. 32 at 2.* | | **¶¶ 156–159:** “The magistrate did not disclose to Plaintiff that she had been identified on that list. The magistrate did not recuse herself. Plaintiff emailed the chief judge of the circuit and the judge presiding over the matter concerning that non-disclosure. No action was taken in response.”<br>**¶ 166:** “The speech at issue in that file includes Plaintiff’s statement that he had lost faith in the court system.”<br>**¶¶ 185–186:** “Plaintiff was not a candidate for any office when Plaintiff made that speech. Plaintiff spoke as an attorney and as a citizen concerning a court’s treatment of Plaintiff.” |
| “Mr. Brown denies being on drugs, but ‘owns’ that his tone was ‘dry and sarcastic.’”<br>*Doc. 32 at 5.* | | **¶ 222:** “At the April 21 deposition, the opposing party, while no question was pending to him, made statements concerning Plaintiff’s loss of the judicial election and accusing Plaintiff of being on drugs.”<br>**¶ 223:** “Plaintiff was not on drugs.”<br>**¶¶ 224–225:** “Neither subject bears any relation to the matter in which the deposition was taken. Both subjects concern Plaintiff’s judicial campaign.”<br>**¶ 226:** “At the April 21 deposition, Plaintiff’s tone was dry and sarcastic. Plaintiff owns that tone.” |
| “As another example, the First Amended Complaint describes | | **¶ 232:** “The characterizations set forth in Paragraphs 63 and 113, 144, 158, 193, 195, and 205 supra are the Bar’s. The speech |

| | | |
|---|---|---|
| three comic books written and published by Mr. Brown, including one in which Mr. Brown 'assists Santa Claus in complying with international flight regulations' and Mr. Brown 'and his dog help people resolve disputes.'"<br>*Doc. 32 at 5.* | | those matters concern is described below."<br>**¶ 233:** "Plaintiff wrote and published three comic books. The comic books were published before Judge-Opponent entered the race. They do not refer to Judge-Opponent." |
| "When the deputies began to question Mr. Brown, Mr. Brown alleges that he called the responding deputies 'pigs—deliberately, and not casually—to make unmistakable that [Mr. Brown] was serious, and that [Mr. Brown] would not hesitate to hold the deputies legally accountable for a wrongful arrest.'"<br>*Doc. 32 at 5–6. The order's account ends here.* | | **¶¶ 253–254:** "During the encounter, Plaintiff walked toward his vehicle, and three or four deputies closed in and stood around Plaintiff. Plaintiff later learned, from the person the deputies had credited, that the deputies had been discussing arresting Plaintiff."<br>**¶ 257:** "No arrest was made, and no charges were filed against anyone."<br>**¶¶ 259–261:** "Plaintiff photographed the deputy's patrol vehicle in order to preserve a record of the encounter. The deputy observed Plaintiff photographing the vehicle. The deputy immediately exited his vehicle and demanded Plaintiff's Florida Bar number."<br>**¶ 264:** "Photographing the conduct of police officers is activity protected by the First Amendment. Smith v. City of Cumming, 212 F.3d 1332, 1333 (11th Cir. 2000)." |

The table shows one more thing a reader might miss. Items (7) and (10) are the same accusation. The "wife of the sitting judge" in (7) is the "female" in (10). The "statements about" her in (7) are the comparison of her pose in (10). The order listed one statement about one complainant twice. Its fourteen accusations are really thirteen.

The worst sentence in the August 11 order is this allegation by its author: "His conduct and statements during and after the judicial election resulted in seven complaints being filed with the Florida Bar." Doc. 32 at 2. That sentence is the Bar's case. My opponent in that election was the sitting judge. The factual dispute in this lawsuit is whether I caused the complaints or his campaign did. The Court answered that question for the Bar. It did so on page two of an order about page counts, before a single defendant had been served and before a scintilla of evidence existed. I pleaded the opposite. The complaints were retaliation. My opponent filed one himself, and his wife filed another. The longest and most plainly false came from a member of his campaign host committee. That member's complaint to the Bar opens, "I am helping Craig McCarthy in his campaign for reelection." Bar File A, complaint of June 27, 2024, at 1; ¶¶ 41, 49, 63, 113, 138.

The other eighteen items in Exhibit B distort or omit what the record says. This one adopts a side. It does not decide the case. Even on the Bar's version of every fact, the question is whether the First Amendment lets the Bar punish the speech at all. But the sentence tells the reader whose account the Court had accepted before the Bar had filed a word. The fourteen numbered accusations work the same way. After a single "alleged" at the top, each one reads as something I did. Without the caption, those fourteen sentences read less like an order about the length of a pleading than like a judgment on the Bar's charges, entered against me. Exhibit B, Items 2–16. That is the prejudgment I filed this case to escape.

**C. The Court has been working toward dismissal, not toward the merits.**

Judge Sneed had this case for four weeks and dismissed nothing. Then it came to Judge Moe, and dismissal followed dismissal. She dismissed my complaint in *Brown v. Tarbert* on July 10, 2026, the day after I filed it, and raised *Younger* abstention herself before any party did. Tarbert Doc. 7. She dismissed my complaint in this case on August 11, two business days after it was transferred to her. Doc. 32. She struck my brief on abstention the same day as unauthorized. Doc. 28. She closed *Brown v. Tarbert* the next day. Tarbert Doc. 13. She dismissed this case again on October 13 and closed it, without ruling on the motion to dismiss. Doc. 52. Each order took a different route to the same place. That is not a judge working out how to decide a case on its merits. It is a judge working toward an outcome she had already chosen.

The Court raised *Younger* abstention in the related case itself, before any party did. On July 10, 2026, the day after I filed it, the Court dismissed the complaint with leave to amend. No defendant had yet said a word. The same order directed me to show cause, when I refiled, why *Younger* abstention does not apply. Tarbert Doc. 7. That was nearly four weeks before this case was transferred to her. Bar proceedings are actually pending in this case. Yet she reached for deference to the Bar in a case about unpublished songs, without any state regulatory case in front of her at all, or any expectation of one. Brown v. Tarbert was not related to any regulatory or criminal case pending in any state.

There is no good explanation for why she ordered me to show cause why that case should not be abstained from under Younger.

On August 26, 2026, I responded under oath to the order to show cause. Tarbert Doc. 16. *Younger* does not apply to prior restraint cases at all despite the judge's order to show cause. The Court ordered me to show cause why a doctrine that cannot apply does not apply. She has kept that case closed for fifty-five days and has not ruled on the response she ordered. Yet in this case, where Younger was at least arguably relevant because Bar proceedings are actually pending, I briefed abstention before anyone asked, and she struck the brief as "unauthorized" the next day. Docs. 27, 28. She ordered Younger briefing where it could not apply, and threw it out where it arguably could. Both sides here later briefed abstention. Doc. 45 at 15–16; Doc. 48 at 15–19. The Court did not decide it. Instead, it closed the file over a disclosure form four days after my response to Defendants' motion to dismiss. Doc. 52. The only thing that changes the speed is whose motion is on her desk.

When this case was transferred to Judge Moe, the Tarbert case had nothing in it to relate to. The July 10 order had dismissed the Tarbert complaint as a shotgun pleading, without prejudice and with leave to amend. It set no deadline to refile. Tarbert Doc. 7. I concede the shotgun ruling was accurate. From that day on, that case had no complaint in it.

On August 6, 2026, this case was transferred to her from Judge Sneed, with her consent, as a case related to *Brown v. Tarbert* under Local Rule 1.07(a)(2)(A). Doc. 17; Doc. 18 (Aug. 7, 2026). The rule exists to save judicial effort when two

cases overlap. There was nothing to overlap with. The consent did not consolidate work. It acquired a case, out of a randomly assigned division, with no workload benefit to the Court.

What followed, by date:

August 11 — Two business days after the August 7 transfer order, with a weekend between, she dismisses the complaint in this case and gives me until August 25 to replead. No defendant had appeared, and no one had asked. Doc. 32.

August 12 — She closes the related case for my failure to file an amended complaint. The order she cites set no deadline to file one. The closing order also cites the funding and artificial intelligence certifications required by standing orders entered July 22. Those orders came twelve days after the July 10 dismissal left that case with no complaint. Tarbert Docs. 7, 11, 12, 13.

August 25 — I replead here. Doc. 33.

August 26 — I move to reopen the related case. Tarbert Doc. 17. That motion has never been ruled on.

October 13 — She closes this case too. Doc. 52.

The two rulings came one day apart, to one pro se litigant. I was working on the first ruling when the second arrived. One case got a deadline. The other was closed without one.

**D. The August 11 order, written the day after the press first covered this case, reads as if it were written for the press.**

The day after a national legal blog first wrote about this case, the Court issued the only order it has entered in either of my cases that recites anything I pleaded. Everything else Judge Moe has entered here is a docket-text endorsement, a form notice, or a standing order. None of them mentions a single allegation. Docs. 28–31, 52. No order in the related case recited the allegations there either, though those pleadings contained song lyrics. Tarbert Docs. 7, 9, 11, 12, 13. The August 11 order recited my autism diagnosis. It recited that I was a domestic violence victim. It also recited the word I used for the deputies who answered my call. ¶¶ 239–245, 253–254. I do not have to prove the Court read the blog. The statute asks what a fully informed observer would make of the sequence, and here it is.

I filed this case as John Doe for a reason. On July 10, 2026, I moved for leave to proceed under a pseudonym and for a protective order. The First Amended Complaint was filed as John Doe while that motion was pending. It pleaded my diagnosis as the basis for the disability accommodation I had asked the Bar for. ¶¶ 323, 355. Anyone reading that pleading knew two things. I am autistic, and I had gone to court to keep that fact from being attached to my name. On August 4, 2026, before this case was transferred, Magistrate Judge Norway denied that motion. Doc. 16. My name went on the docket that day. Judge Moe received the case two days later, with that ruling on its face. On August 7, 2026, a legal journalist, Eugene Volokh, wrote to ask about the ruling. I answered the next evening. I asked him to handle the basis of my ADA claim with care: "I trust that you will handle the ADA with care". I also told him that,

as long as the process was working, "I will have nothing to say outside of my papers and pleadings." Exhibit D (emails of August 7 and 8, 2026). Before publishing, he sent me the passage he intended to quote, and I approved it. His article ran on August 10, 2026, at 10:33 a.m., with that passage, including my request for care.[1] Exhibit C (Eugene Volokh, *No Pseudonymity for Autistic Ex-Judge-Candidate, Alleging Failure to Accommodate Disability in Bar Investigation*, The Volokh Conspiracy (Aug. 10, 2026)). A reader of that article learned that I am autistic, that I had been unmasked, and that I wanted the basis of my ADA claim handled with care. The reader did not learn that I had said I would have nothing to say outside my papers.

The next day, the August 11 order described my ADA motion (Doc. 13) in one sentence. It said I had asked to appear in person before the grievance committee "as an accommodation because he is autistic." Doc. 32 at 3. That is half of it. I asked to give my statement live, because in person I can see how I am being understood and correct it as I go. A written statement does not allow that. The Bar never sent the request to its ADA coordinator. It pointed instead to a video option: a few extra words hidden in a dense form notice, the same form notice I had already received before. Nothing in the notice mentioned my request, so I had no reason to look there for an answer to it. Nevertheless, the

1 My reply also included this paragraph, which was not in the excerpt Professor Volokh sent me for approval: "In balance, I do believe litigants and counsel should ethically self-govern to avoid tipping the scales while Courts work to resolve issues. So, as long as 'the process', including its foundational rules contained in the Constitution, is still working, I will have nothing to say outside of my papers and pleadings." Exhibit D. That is no criticism of him. Choosing what to quote is a journalist's call; he quoted me accurately, checked the excerpt with me first, and had no obligation to include more.

accommodation allegedly offered had nothing to do with my actual needs. Doc. 13 at 1–4. The order did not rule on any of that. It denied the ADA motion only because the complaint had been dismissed. Doc. 32 at 6. The word "disability" would have said everything that ruling needed. I had asked the press to handle the basis of that claim with care. The Court named it anyway and left out the rest.

The diagnosis is not the only private fact the order published. The order's passage about the ride in my car recounts that the man driving it "had been physically violent" toward me. Doc. 32 at 5–6. That is true. I pleaded it because it is why I was afraid and why I called the police. ¶¶ 236, 252. The order offered the passage as an example of what does not belong in a pleading. It ended the passage on my calling the deputies "pigs." So within three pages of a public order, under my name, I was identified as autistic and as a domestic violence victim. The passage made it look as though I had called deputies a name. I did not. I used a well-known political term to point out to the deputies that they were being bad cops. The Court highlighted it in a negative light despite the line of cases recognizing a right to say that, and far worse. *E.g.*, *City of Houston v. Hill*, 482 U.S. 451, 461 (1987); *Brown v. Oklahoma*, 408 U.S. 914 (1972); *Wood v. Eubanks*, 25 F.4th 414 (6th Cir. 2022) (collecting cases). The order calls this unnecessary detail. It was necessary. I pleaded the whole encounter to show why I used that word. After hearing the man's false story, the deputies moved to arrest me, the person who had called them for help. ¶¶ 253–254. I was not arrested. I stood up to them, calmly and properly, on body camera, keeping my hands where they

could see them at all times so they would not shoot me, and I did nothing wrong. When I photographed the patrol car, a deputy got out of his car for my Bar number. If I had done anything wrong, he would have gotten out with handcuffs. The order kept the word and cut the reason.

The order says I "found" myself as the passenger in my own car with an intoxicated driver. Doc. 32 at 5. I did not find myself there. I got in on purpose, because I would not let an impaired man drive off alone in my car and hurt someone. I got him to stop at the next major intersection, at a convenience store, so that I could call the police. I called them as the complaining party and waited for them. ¶¶ 244–245. The order left that out too. I pleaded that I "was not going to allow an intoxicated man with that history to drive off alone in Plaintiff's vehicle." ¶ 239. The order left that out.

The August 11 order was entered at 3:13 p.m. Sixty-four minutes later, at 4:17 p.m., the same blog posted it under a heading that begins "In Its 870 Paragraphs, 269 Pages, and 63 Causes of Action," and introduced it as "the case I posted about yesterday". The author added one line of his own; the rest of the post is the order itself. Her words were worth publishing to a national audience within the hour, and the excerpt he chose to quote begins with her prejudicial word choices: the "seven complaints" sentence, the fourteen accusations, and "because he is autistic." It also reprinted "pigs." Exhibit C (Eugene Volokh, The Volokh Conspiracy (Aug. 11, 2026)). The one order written the day after the article is the one that reads as if it had an audience. It reached that audience the same day. A fully informed observer draws the inference I draw: that the Court

read the article, took me for a grandstander, and wrote the August 11 order to beat me to it. A judge does not write an order about the length of a pleading for an audience unless she has already decided who the pleader is. And she never gave me the chance to show her the last paragraph of my reply, the one the first post left out. See n.1.

**E. The October 13 order completes a double standard.**

The October 13 order closed my case over a curable paperwork defect, while the Defendants' defects drew no comment. On October 13, 2026, four days after I filed my response to Defendants' motion to dismiss, Judge Moe struck the response in one endorsed order. The same order denied my pending motion for a preliminary injunction, dismissed the operative pleading, and closed the file. Doc. 52. She gave two reasons. The first was that I had not filed the third-party litigation funding disclosure the Court's funding order requires. The second was that the response was "also due to be stricken" under Local Rule 1.08, but she did not say what the defect was. She made no finding that I acted willfully. She made no finding that anything short of dismissal would do. And the disclosure she closed the case over was already on file in front of her, in the related case. Tarbert Doc. 14 (Aug. 25, 2026). It was not on this docket. But in the two months since the funding order was entered, no order and no party had said a word about it. No filing of mine in this case had ever been struck or questioned under Rule 1.08.

Defendants' motion to dismiss cites "Manders v. Lee, 338 Fl. 3d 1304" and "Marsh v. Butler County, 268 F.2d 1014 (11th Cir. 2001)". The latter is a 2001 case, but its reporter stopped publishing in 1993. The former's reporter never started,

because it never existed. The motion cites both under a certification that counsel had read every case cited. Doc. 45 at 7, 17, 19. It quotes paragraphs 434 and 484 of the First Amended Complaint as the operative allegations. Doc. 45 at 12. Judge Moe had dismissed that pleading two months earlier, and the operative pleading has seventy-eight paragraphs. Defendants moved to dismiss one complaint by quoting another. The Court that had dismissed the one they quoted took the motion without comment. Defendants' response to the preliminary-injunction motion said I had "failed to include" the certification the Court's standing order on artificial intelligence requires. They said so under their certification that no artificial intelligence was used to prepare it. The certification they said was missing was filed with the motion. Doc. 34-2; Doc. 47 at 18–19.

On October 8, I conferred with counsel on a motion to strike. Counsel offered to correct the misstatement about my artificial intelligence certification by notice. I agreed and withdrew the motion, and on October 12 they filed the notice. Doc. 51. No sanction followed, and I asked for none. I offer this account of the conferral with counsel only to show how these issues can and do resolve themselves when the Court is not targeting one party with immediate rulings on technicalities. My response to the motion to dismiss had pointed out each of these problems. Doc. 48. On October 13, the day after the notice, the Court struck that response, the paper that had identified the defects, and closed the case. My response was struck over a disclosure I had already filed before the same judge. The Bar's motion carried a certification its citations contradict. It argued from a

pleading the Court had thrown out. It got the dismissal it asked for without a ruling on it.

**ARGUMENT**

*Liteky* asks whether what the Court formed from the proceedings displays "deep-seated favoritism or antagonism." 510 U.S. at 555. Ground B answers that question with a measurement. What Ground B measures is not a ruling I happen to disagree with. It is a direction, and it can be checked. The other grounds show the same direction in everything else the Court has done in my cases.

The sequence shows what the Court wanted, and what it did when the law would not give it. The Court began with a disposition: these cases belong to the Bar. The law it cited would not carry it there, so it got there another way. In the Tarbert case it used silence (Ground C). In this case it used a disclosure form (Ground E). That is a result in search of a reason. The orders did not end in bias. They began with it. A fully informed observer would see it, and § 455(a) asks nothing more.

There seems to be a bias against me because I am suing The Florida Bar. It is natural to assume that the Bar is above reproach. It is the Bar; it knows the law. But the Bar is wrong here, and that is what I have alleged. I have the right to try to prove it. That burden is mine. It is unfortunate that the Bar put it on me, but I accept it, and if I fail to carry it, I will live with the result. Stopping me before I get that chance violates my civil rights.

**LEGAL SUFFICIENCY**

This motion meets each requirement of § 455(a), and the two the courts add.

1. "Any . . . judge . . . of the United States": Judge Moe is a United States District Judge, presiding over this case and the related case.

2. "shall disqualify": This mandatory duty is the judge's. It requires no affidavit, as § 144 does, and no proof of actual bias. I have filed that affidavit with a separate motion under § 144. *Liljeberg*, 486 U.S. at 859–60.

3. "in any proceeding": This case is a proceeding. The October 13 order closed the file, but my time to move under Rule 59(e) to alter or amend it is open, and I am filing that motion. Any ruling on it is a ruling in this proceeding.

4. "impartiality": The question is impartiality between the parties. Grounds B, D, and E show antagonism toward me. Grounds A and C show favor toward the Bar's position and the Bar's institution.

5. "might reasonably be questioned": The test is objective. It asks whether a fully informed lay observer would entertain a significant doubt about the judge's impartiality. *Parker*, 855 F.2d at 1524. The facts are sworn in my declaration and documented in the docket and Exhibits A through E. None depends on my opinion of the judge. Each can be checked.

6. Not adverse rulings alone: The grounds are not that I lost. The Court put words in its orders that the rulings did not require (Grounds B and D). What it recited runs in a measured direction (Ground B). It held the parties to different standards (Ground E). Two grounds rest on facts from outside the proceedings.

One is the press coverage the day before the August 11 order (Ground D). The other is the undisclosed 13-C service (Ground A). Opinions formed in the case are enough when they show deep-seated antagonism. *Liteky*, 510 U.S. at 555. Here there was barely a case to form them from. In both cases, the Court ruled before any defendant had said a word (Ground C). The Court made its judgment about me before it knew me.

7. Timely: I did not delay. The motion is due "within a reasonable time after the grounds for the motion are ascertained". *Summers v. Singletary*, 119 F.3d 917, 921 (11th Cir. 1997). An adverse ruling alone is not a ground. *Liteky*, 510 U.S. at 555. I measured the August 11 order the day it issued, Exhibit A. Under that case law, one adverse order is not a ground, and a motion then would have been premature. I gave the Court the benefit of the doubt, even after its August 11 order was published nationally, Exhibit C. The grounds crystallized on October 13, 2026. On that day the Bar's defective citations passed without comment, while my curable paperwork defect drew the harshest available sanction. That sanction was dismissal of the entire action, not a rule to show cause or leave to amend. I filed within days.

I allege actual bias. The same facts show "a personal bias or prejudice concerning a party". 28 U.S.C. § 455(b)(1). If the Court finds them short of that, they show at least that its impartiality "might reasonably be questioned." § 455(a). That is all disqualification requires.

Because the motion is legally sufficient, the Court must grant it, and Judge Moe "shall disqualify [herself]." 28 U.S.C. § 455(a), (b)(1).

**CONCLUSION**

After the July 10 dismissal, I told myself it was my fault and that it had nothing to do with the judge. After the August 11 dismissal, I could have told myself the same thing, until I read the order. Then came the October 13 order, and the difference in how the two sides were treated. I came to federal court because I am being punished, in retaliation, for saying truthful things about a judge. The First Amendment protects that speech. The punishment rests on absurdly false allegations made by someone helping that judge's campaign. What I got was a judge reciting those allegations about me as decided fact. She heard no evidence. No defendant had filed a word, and none had even been served. The summonses had issued the day before the August 11 order. Docs. 26, 40, 42–44. Anyone who looks me up will find that description, in the public records of the United States, for as long as this country exists.

I believed, and I still believe, that a federal court is where a citizen goes when a state institution has decided what he is before hearing him. This motion documents, row by row, that I found the same thing again on page two of the August 11 order. I ask that Judge Moe disqualify herself under 28 U.S.C. § 455(a) and (b)(1) and that this action be reassigned.

Dated: October 20, 2026
Respectfully submitted,

/s/ Stephen Christopher Brown
Stephen Christopher Brown
509 S. Chickasaw Trail #286
Orlando, Florida 32825
(407) 956-2172

stephen@brownandrice.com
Plaintiff, Pro Se (Fla. Bar No. 43406)

**LOCAL RULE 3.01(G) CERTIFICATE**

I certify that on October 15, 2026, I conferred by email with John Londot, Esq., counsel for Defendants, about the relief this motion requests. The parties do not agree on any part of the motion. Defendants oppose it.

**DECLARATION OF STEPHEN CHRISTOPHER BROWN UNDER 28 U.S.C. § 1746**

I, Stephen Christopher Brown, declare under penalty of perjury under the laws of the United States of America that I am the Plaintiff in this action; that I have personal knowledge of the facts stated in every part of the foregoing; and that those facts, and the docket entries and dates cited there, are true and correct to the best of my knowledge. Exhibit B is a true and correct compilation of quotations from the August 11 order and the First Amended Complaint. Exhibit C is a true and correct copy of Eugene Volokh's posts on The Volokh Conspiracy of August 10 and 11, 2026. Exhibit D is a true and correct copy of Eugene Volokh's email to me of August 7, 2026, and my reply of August 8, 2026. Exhibit E is a true and correct copy of the text-message screenshots submitted by a complainant to the Bar as Exhibit M to her rebuttal.

Executed on October 20, 2026, in Orange County, Florida.
/s/ Stephen Christopher Brown

The certification required by the Standing Order on the use of artificial intelligence (Doc. 31) is filed as an attachment to this motion.

**CERTIFICATE OF SERVICE**

I certify that on October 20, 2026, I filed this Motion with the Clerk of Court using the CM/ECF system, which will serve a copy on all counsel of record, including John Londot, Esq., Greenberg Traurig, P.A., counsel for the Florida Bar Defendants, at londotj@gtlaw.com, hoffmannm@gtlaw.com, and tallitdock@gtlaw.com.

/s/ Stephen Christopher Brown