**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

STEPHEN CHRISTOPHER BROWN,
*Plaintiff*,
v.
THE FLORIDA BAR; ASHLEY MORRISON, in her official and individual capacities; JOSHUA E. DOYLE, in his official and individual capacities; GYPSY BAILEY, in her official and individual capacities; and JOHN/JANE DOE(S), unknown official(s) of The Florida Bar, in their official and individual capacities,
*Defendants*.
_______________________________/

Case No. 6:26-cv-01481-AGM-RMN

**PLAINTIFF'S RESPONSE TO MOTION TO DISMISS (Doc. 45)**

> The assumption that respect for the judiciary can be won by shielding judges from published criticism wrongly appraises the character of American public opinion. . . . [A]n enforced silence, however limited, solely in the name of preserving the dignity of the bench, would probably engender resentment, suspicion, and contempt much more than it would enhance respect.

*Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 842 (1978) (quoting *Bridges v. California*, 314 U.S. 252, 270–71 (1941)).

## I. FLORIDA'S RULES GO BEYOND LICENSE REGULATION.

A. The rules are criminal in nature, and due process applies. Defendants' motion rests on a comfortable fiction: that a Florida lawyer holds a mere privilege, revocable at the State's pleasure, and that nothing more than a privilege is at stake here. *See* Doc. 45 at 12 (practicing law "is not a fundamental right"). Florida's own rules tell a different story. The Bar is prosecuting Plaintiff for what he said about his opponent, a sitting judge, in a judicial election.

Upon taking the oath, a Florida lawyer is stuck. There are three ways out: death, the executive director's permission to retire, R. Regulating Fla. Bar 1-3.5(a), or the Supreme Court of Florida's permission to voluntarily revoke the license, R. 3-7.12. Retirement is no escape from the past; a retired member "remains subject to disciplinary action for acts committed before the effective date of retirement." R. 1-3.5(e). Revocation comes only on proof that release "will not adversely affect the public interest," and only on terms that are "tantamount to disbarment." R. 3-7.12(c), (d). Plaintiff is unaware of any other profession that binds its licensees this way. A Florida lawyer cannot simply give up the license, and he remains subject for life to contempt for failing to comply with a court's orders. Nothing breaks that hold. Florida's licensing scheme is not just a privilege. It is a commitment. The lawyer swears an oath to serve as an officer of the court and submits to the court's contempt power, which includes imprisonment. Plaintiff does not ask any court to surrender that power. He asks only that it come with the process the Constitution attaches to it. The Bar need not even serve the lawyer: "service of process is not required to obtain jurisdiction over respondents in disciplinary proceedings." R. 3-7.11(c).[1] And the process runs on a court's power. A lawyer who fails to obey a Bar subpoena "may be cited for contempt of the Supreme Court of Florida," R. 3-7.11(d)(7)(A), and that court may then impose "any sanction that

1 Interestingly, in this case, the Bar required service of process. At the outset of this action, the Bar's counsel promised to accept service for every Defendant. When Plaintiff added Bailey, the Bar's General Counsel, counsel said he needed her permission, then confirmed he had it. Still no acceptance came, and Plaintiff's follow-ups went unanswered. Weeks later, Plaintiff served the Bar and its member lawyers. *See* Docs. 26, 39 (summonses issued Aug. 10 and Aug. 27, 2026); Docs. 40, 42–44 (returns of service executed Aug. 28 and 31, 2026). The rules spare the Bar the trouble of serving a lawyer; its counsel saw no reason to spare Plaintiff the trouble of serving the Bar.

a court may impose for contempt," R. 3-7.11(f)(1)(F). That power has no stated ceiling. No subpoena is even needed: failing to "respond, in writing, to any official inquiry by bar counsel" is itself misconduct, R. 4-8.4(g), and grounds for a contempt petition and suspension, R. 3-7.11(f)(2). Contempt, and with it jail, is available before anyone has found that the lawyer violated a single rule. The Bar took Plaintiff's sworn testimony under that threat. Doc. 33 ¶¶ 15–16. No doctor has ever been held in contempt of medicine.

The hold does not end when a sanction is imposed. A respondent may be ordered to pay the Bar's costs of prosecuting him, including a flat administrative fee. R. 3-7.6(q)(1)(I), (q)(3). The Bar need only be "successful in whole or in part": prevail on one charge of a hundred, and the respondent may be billed for investigating all hundred unless he proves the costs "unnecessary, excessive, or improperly authenticated." *Id.* And the bill is the Bar's revenue: by its own account, it funds its operations in part with "prosecution costs paid by disciplined lawyers, as directed by order of the Florida Supreme Court." The Florida Bar, *What We Do*, floridabar.org/about/faq/what-we-do. The accuser writes the bill and keeps the money. If the respondent does not pay within thirty days, he becomes a "delinquent member," "prohibited from engaging in the practice of law" and stripped of every privilege of membership. Yet he remains a member, bound by the rules and within the jurisdiction. R. 1-3.6(a)(3), (b). He loses the license's benefits and keeps its burdens, and the contempt power stands behind every order.

A licensing agency that disciplines a doctor or a contractor can suspend or revoke, and must go to a court to compel anything more. The Florida Bar insists it is not an agency at all, but "an official arm of the Florida Supreme Court." Doc. 45 at 2. Defendants invoke that status for immunity. It is also the source of the problem: the body that charges the lawyer, sanctions him, and orders him to pay is armed with a court's contempt power, which includes the power to jail.

That is not a licensing scheme. It is custody. Under these rules Plaintiff stands where a criminal defendant stands. He is held by status, cannot exit, and answers in contempt. American law knows one other jurisdiction of that kind. It is the military, where court-martial jurisdiction turns on "one factor: the military status of the accused." *Solorio v. United States*, 483 U.S. 435, 439 (1987). But that jurisdiction rests on an express grant in the Constitution itself, the power "[t]o make Rules for the Government and Regulation of the land and naval Forces." U.S. Const. art. I, § 8, cl. 14. The Florida Bar's rests on rules a state court wrote for itself.

Calling discipline civil changes nothing. The rule does not confine itself to civil contempt; it authorizes "any sanction that a court may impose for contempt," criminal contempt included. The Supreme Court of Florida agrees: criminal contempt is "a crime in the ordinary sense," and the accused gets "the same constitutional due process protections afforded to criminal defendants." *Parisi v. Broward Cnty.*, 769 So. 2d 359, 364 (Fla. 2000) (citation omitted). That process arrives only when contempt is charged. But jail is in play at every step of the process: at the inquiry, where silence is itself misconduct, R. 4-8.4(g); R. 3-7.11(f)

(2); at the subpoena, R. 3-7.11(d)(7)(A); and at the sanction, which is an order of the Supreme Court of Florida. Whether the Bar has yet jailed a lawyer is beside the point. The rule authorizes it, and due process attaches to what the State has armed itself to do, not only to what it has done.

The character of the sanction controls, not the label, and "[w]here a single judge, rather than a legislature, declares a particular sanction to be civil or criminal, such deference is less appropriate." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 838 (1994). Here the rule-maker and the sanction-imposer are the same court. By Defendants' account, that court is also the accuser, acting through its "official arm," Doc. 45 at 2. It appoints the referee who finds the facts, and it is the final judge. "[A]n unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case." *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016). Defendants ask this Court to abstain under *Younger*—a doctrine of deference to state criminal prosecutions. Doc. 45 at 15–16. They want the deference owed a prosecution without the protections owed the accused. The Bar would have the Court believe that under *Younger*, if a lawyer pushed another lawyer down the stairs to his death, and the Supreme Court of Florida wrote execution into the Bar's rules as the sanction, a federal court would have to stand aside and let the Bar carry it out.

The question is not whether the practice of law is a "fundamental right." The rules reach past the license to the person who holds it, and "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S.

71, 80 (1992). Even measured by the license alone, the answer is the same. Disciplinary proceedings are "adversary proceedings of a quasi-criminal nature," and disbarment "is a punishment or penalty imposed on the lawyer." *In re Ruffalo*, 390 U.S. 544, 550–51 (1968). A license revocable only for misconduct is property the Due Process Clause protects. *Barry v. Barchi*, 443 U.S. 55, 64 (1979). Florida's rules reach both. Defendants' own authority concedes that the interest in practicing one's profession and "its entitlement to due process protection has long been recognized." *Jones v. Bd. of Comm'rs of Ala. State Bar*, 737 F.2d 996, 1002 (11th Cir. 1984). No one disputes that States may regulate lawyers. Doc. 45 at 13. They must do it within the Constitution.

B. Plaintiff pleaded the detail the motion says is missing. On a motion to dismiss, "[t]he scope of the review must be limited to the four corners of the complaint." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). The operative complaint is the Second Amended Complaint. Doc. 33. The First Amended Complaint, dismissed for its "extraordinary level of extraneous detail," Doc. 32 at 5, is not: "[A]n amended pleading supersedes the former pleading," and "the original pleading is abandoned by the amendment." *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (citation and quotation omitted). Yet Defendants' motion relies on the dismissed pleading throughout. It cites that pleading's paragraphs, Doc. 45 at 12, and borrows facts found only there, *id.* at 11. Those facts are not before the Court. That pleading also contains the detail that answers nearly every gap Defendants now claim. Plaintiff removed that detail because the Court ordered it, and does not rely on it here for the same reason.

Defendants may not win dismissal on its absence. Their own motion cites and answers that pleading by paragraph number, which shows the notice Rule 8 requires. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). And "there is no 'heightened pleading standard' as it relates to cases governed by Rule 8(a)(2), including civil rights complaints." *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010). If any count wants detail, the detail exists,[2] and Plaintiff asks leave to restore it. Defendants have already briefed against those allegations, Doc. 45 at 11–12, so restoring them prejudices no one. Defendants ask for dismissal with prejudice on the ground that amendment would be futile, *id.* at 5, 13, but futility reaches only defects no amendment could cure. *O'Halloran v. First Union Nat'l Bank of Fla.*, 350 F.3d 1197, 1206 (11th Cir. 2003). Here the cure is the detail the Court ordered removed.

**II. THE MOTION WORKS FROM FACTS ABSENT FROM THE RECORD.**

The heart of Defendants' Title II argument is a tale: the Bar "fully responded to Plaintiff's request for accommodation," granted the extension, "granted" his request to speak "though by video as opposed to in person," and denied the rest. Doc. 45 at 10–11. These facts don't exist in the four corners of the complaint. Counsel is simply appending facts to the record for Defendants' convenience. The complaint alleges the opposite: no written decision, unknown decision-maker at best, and no response to inquiry. Doc. 33 ¶¶ 21–22.

---

2 The detail appears in the dismissed First Amended Complaint. *See* Doc. 8 ¶¶ 370, 407–08, 420, 500, 503 (conduct outside Defendants' authority; *see* Doc. 45 at 7–8); ¶¶ 331, 342, 344, 349–56, 372–74 (what the Bar did and did not furnish; *id.* at 10–11); ¶¶ 438, 441, 443–45, 451 (delay and injury; *id.* at 13); ¶¶ 392–426 (inadequacy of the state forum; *id.* at 16); and ¶¶ 496, 503–04, 523–26 (investigative and administrative acts; *id.* at 17).

Defendants had an easy way to prove their story. Every assertion describes the Bar's June 1, 2026 notice, a document referred to in the complaint and central to Count IV, which they could have attached without converting the motion. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). They chose not to. Counsel is honorable and brilliant, but his word is not gospel. The Court should disregard the assertions. If it does not, the motion "must be treated as one for summary judgment," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

The motion makes no argument that Counts I (First Amendment retaliation), II and IX (equal protection), or III (declaratory judgment) fail to state a claim. It meets them only with immunity, jurisdiction, and abstention. It reaches Count VIII only through qualified immunity. Doc. 45 at 16–17. Defendants cannot raise those arguments for the first time in reply. *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005).

**III. ABSOLUTE IMMUNITY DOES NOT APPLY.**

A. Every immunity case Defendants cite is a case for damages. Defendants line up a string of cases holding the Bar immune. *Mueller* was a defamation and malicious-prosecution action, and *Zavadil*, *Spano*, and *Cassell* were state tort suits. *Carroll v. Gross* was a § 1983 suit dismissed as frivolous. *Cole v. Owens*, the one declaratory claim among them, rested independently on the Florida Supreme Court's exclusive jurisdiction and the plaintiff's lack of standing. Not one stands for their implication that the Bar cannot be enjoined from future civil rights

violations. No such authority exists, however hard the Bar has tried to declare itself free to decide if and how constitutional protections apply.

Officials who enforce attorney-discipline rules, even where immune from damages, are "natural targets for § 1983 injunctive suits, since they are the state officers who are threatening to enforce and who are enforcing the law." *Supreme Court of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 736 (1980). The Bar knows the rule. It concedes in a footnote, as a constitutional afterthought, "that immunity does not extend to immunity from equitable relief." *Slavin v. Curry*, 574 F.2d 1256, 1266 (5th Cir. 1978), *overruled on other grounds*, *Sparks v. Duval Cnty. Ranch Co.*, 604 F.2d 976 (5th Cir. 1979) (en banc), cited at Doc. 45 at 4 n.1; *see Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc). Defendants' footnote defeats their defenses.

Counts I, II, III, and IX, and Count VIII as to Morrison, the prosecutor, seek only declaratory or prospective relief against officials in their official capacities and, in Count III, the Bar. Count IV seeks prospective relief against a public entity under Title II, to which judge-made immunity is no defense at all. Defendants' Florida decisions add nothing, because "[t]he elements of, and the defenses to, a federal cause of action are defined by federal law." *Howlett v. Rose*, 496 U.S. 356, 375 (1990); *Martinez v. California*, 444 U.S. 277, 284 n.8 (1980).

B. Defendants name offices, not functions. For the damages counts, V through VII, absolute immunity is not a perk of the job title. It "is justified and defined by the functions it protects and serves, not by the person to whom it attaches." *Forrester v. White*, 484 U.S. 219, 227 (1988). The official claiming it bears

the burden, and the presumption is that qualified immunity is enough. *Burns v. Reed*, 500 U.S. 478, 486–87 (1991). A prosecutor doing investigative work gets qualified immunity only. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273–76 (1993). Defendants never identify a single function. They recite titles.

The functions actually pleaded are not advocacy. Count V alleges that Morrison asked Plaintiff under oath whether he would run for judicial office again and what his planned judicial-transparency political committee would do—and then exercised ADA authority over his accommodation request. Doc. 33 ¶¶ 15–16, 54–55. Counts VI and VII allege that the Executive Director, Doyle, never designated an ADA coordinator or adopted any grievance procedure for the attorneys the Bar prosecutes and did nothing when told in writing, and that the General Counsel, Bailey, either approved a format Plaintiff never asked for or had no part in a decision the Bar attributed to her. *Id.* ¶¶ 18, 23–25, 59–60, 63–67. Count VIII alleges a notice at the Orlando office's reception area bearing Plaintiff's photograph and telling staff to call security. *Id.* ¶¶ 26–29. Defendants' own description of the claim against Bailey, "reviewing an accommodation request," Doc. 45 at 10, names the function and concedes it is not prosecution. Under its own rules the Bar "has no authority to adjudicate rights" in disciplinary proceedings. R. 3-7.5(a)(3). Dismissal with prejudice as "futile" does not follow.

**IV. ELEVENTH AMENDMENT IS NO BARRIER TO THESE CLAIMS.**

Defendants concede the *Ex parte Young* exception for "actions seeking only prospective injunctive or declaratory relief to end violations of federal law," then wave it away because "Plaintiff cannot state a claim for violations of federal law

given the immunity defenses described above and the lack of jurisdiction described below." Doc. 45 at 8. That is circular, and the Supreme Court has foreclosed it. A court "need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective," and the inquiry "does not include an analysis of the merits of the claim." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645–46 (2002) (quotation marks omitted). This complaint expressly alleges ongoing violations and asks only for future relief. The accommodation request remains "pending," the reception-area notice's "publication is ongoing," and the prosecution and the Bar's unequal enforcement continue. Doc. 33 ¶¶ 14, 39, 43, 52, 73, 78.

Counts V, VI, and VII seek damages from officials personally, and "[t]he Eleventh Amendment does not bar such suits." *Hafer v. Melo*, 502 U.S. 21, 31 (1991). Defendants sweep them in without a word of distinction. *Pennhurst* involved state-law claims and *Edelman* retroactive payment from a state treasury; the claims here are federal claims that seek no damages against States, only against individuals.

*United States v. Georgia* concerns abrogation of immunity from "a private cause of action for damages against the States." 546 U.S. 151, 159 (2006). Count IV seeks no damages, and *Ex parte Young* permits its prospective relief against Doyle and Bailey in their official capacities regardless. Were abrogation at issue, Title II validly abrogates immunity in cases implicating "the fundamental right of access to the courts." *Tennessee v. Lane*, 541 U.S. 509, 533–34 (2004).

## V. THE BAR'S ANSWER TO THE ADA IS THE VIOLATION ITSELF.

The June 1 notice is not a decision. The complaint alleges that "[n]o written decision identified the decision-maker, referenced Plaintiff's request, or explained the substitution." Doc. 33 ¶ 21. Morrison never answered Plaintiff's written questions about who authorized the denial. Bailey never communicated with him. *Id.* ¶¶ 22–25. And if the Court accepts Defendants' word that the request "was therefore denied," the regulation permits denial only for fundamental alteration or undue burden, and that decision "must be made by the head of the public entity or his or her designee . . . and must be accompanied by a written statement of the reasons for reaching that conclusion." 28 C.F.R. § 35.164. Defendants identify no determination, no decision-maker, and no reasons. Either no one decided, or someone the regulation does not authorize decided, for reasons no one has stated. The claim survives either way.

Defendants' only justification is that the Bar's rules "do not provide a right for or a forum for any respondent to a grievance to appear in person." Doc. 45 at 11. That is not a defense. It is the reason Plaintiff asked for a modification. A public entity "shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate" a fundamental alteration. 28 C.F.R. § 35.130(b)(7)(i). If pointing to the rule that excludes were enough, Title II would require nothing of anyone. Defendants do not claim fundamental alteration or undue burden.

The duty is affirmative, and the requester's preference comes first: a public entity "shall furnish appropriate auxiliary aids and services" and "shall give primary consideration to the requests of individuals with disabilities." 28 C.F.R. § 35.160(b)(1)–(2). Morrison herself requested a letter from Plaintiff's therapist. The letter explained that his verbal skills are strongest in "structured, rule-based environments such as a courtroom." Doc. 33 ¶ 20. Without consulting him, the Bar replaced that setting with "an unstructured, non-interactive" one. *Id.* ¶ 21. Defendants recast Plaintiff's request as one about writing: an extension "because of his alleged written communication limitations," and an oral statement "granted, though by video." Doc. 45 at 11. That is wrong. Plaintiff does not have a writing problem. The sensory overload his therapist described is a symptom of his autism; it calls for more time with intricate written material, Doc. 33 ¶¶ 19–20, not a lesser ability to write. The pleading Defendants rely on for their other arguments says so: "Plaintiff's limitation is not an inability to produce written work. It is an inability to anticipate how a reader will construe it." Doc. 8 ¶ 327. That is why he asked to appear in person, where he can see a misunderstanding and correct it, and why a video recorded for no audience accommodates nothing. Doc. 33 ¶¶ 20–21. Defendants' account of the extension comes from that same dismissed pleading, Doc. 8 ¶¶ 341, 364; the explanation of the request sits fourteen paragraphs earlier. Defendants took the paragraphs that helped them and left out the one that did not. Whether the Bar's substitution was reasonable is "a highly fact-specific inquiry." *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1085 (11th Cir. 2007).

The motion ignores half of Count IV: the Bar has no ADA coordinator and no grievance procedure for the attorneys it prosecutes, 28 C.F.R. § 35.107(a)–(b), and makes no Title II information available to them, *id.* § 35.106, while it publishes accommodation procedures for the complainants who file against them. Doc. 33 ¶¶ 18, 51–52.

**VI. A STATE CANNOT CLOSE THE FEDERAL COURTHOUSE.**

Section III of the motion makes an extraordinary claim. It does not ask the Court to defer. It says the Court is powerless: that "only the Florida Supreme Court or its delegee courts have authority," and that because "the Florida Supreme Court has not delegated disciplinary review to the federal courts," this Court "lacks jurisdiction." Doc. 45 at 14–15. On that theory a State could close the federal courthouse to federal civil-rights claims by writing a provision into its constitution.

That is not the law, and it never has been. Federal jurisdiction "is determined by the law of the court's creation." *Marshall v. Marshall*, 547 U.S. 293, 314 (2006) (quoting *Tenn. Coal, Iron & R.R. Co. v. George*, 233 U.S. 354, 360 (1914)). Congress conferred it here, 28 U.S.C. §§ 1331 and 1343(a), and no Florida provision can subtract from it. Article V, Section 15 of the Florida Constitution, Rules 3-3.5 and 3-7.7, *Pantori*, and *Cole v. Owens* allocate power among Florida's own tribunals. They say nothing about federal courts, because they cannot. Section 1983 exists precisely "to interpose the federal courts between the States and the people, as guardians of the people's federal rights." *Mitchum v. Foster*, 407 U.S. 225, 242 (1972). The Florida Supreme Court does not decide whether to "delegate" that role.

Congress assigned it. Defendants have demoted this Court below a state trial court. A Florida circuit court may hear these matters, because Tallahassee has delegated concurrent jurisdiction to it. Doc. 45 at 14 (quoting R. 3-3.5). A United States District Court may not, because Tallahassee has not.

A State does not place its punishment of speech about judges beyond the reach of the federal Constitution by assigning the subject to its own highest court. Florida has been here before. When a Dade County court held the associate editor of the Miami Herald in contempt for editorials criticizing its judges, and the Supreme Court of Florida affirmed, the Supreme Court of the United States reversed. *Pennekamp v. Florida*, 328 U.S. 331 (1946). The speech at the center of this case is speech about a sitting judge in a judicial election. Federal law governs how Florida may punish it, whoever Florida says has the last word.

And district courts plainly have jurisdiction over "general challenges to state bar rules . . . which do not require review of a final state-court judgment in a particular case." *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983). Counts II and III are that kind of challenge. They ask whether an election-related complaint may still be processed as a judicial referral after the Supreme Court of Florida amended Rule 3-7.18 to exclude such complaints. Doc. 33 ¶¶ 13–14, 41–42, 47. They do not ask the Court to try the charges.

Defendants' own motion refutes them. The motion's Section III says the Court has no power; its Section IV asks the Court to decline power it has. Abstention presupposes the jurisdiction it declines. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013). Defendants cannot have both. And a dismissal for

want of jurisdiction, which Defendants also seek, Doc. 45 at 15, "is not a judgment on the merits and is entered without prejudice." *Stalley v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).

## VII. YOUNGER DOES NOT PROTECT A PROSECUTION THAT HAS NOT BEEN FILED, OR ONE BROUGHT IN BAD FAITH.

Federal courts have a "virtually unflagging" obligation to exercise their jurisdiction, and *Younger* is a narrow exception to it. *Sprint*, 571 U.S. at 77–78. Defendants never say which of *Younger*'s three categories applies. Their entire showing on adequacy is one sentence: Plaintiff "has not demonstrated that the Florida Supreme Court proceeding is incapable of providing him an adequate forum." Doc. 45 at 16. That turns the burden upside down, and it presumes a proceeding Defendants never identify.

### A. There is no pending judicial proceeding.

*Sprint* explained what made *Middlesex* a proceeding: "an investigation and formal complaint preceded the hearing, an agency of the State's Supreme Court initiated the hearing, and the purpose of the hearing was to determine whether the lawyer should be disciplined." 571 U.S. at 81. Florida draws that line later than New Jersey did. Grievance-committee proceedings "may be informal in nature." R. 3-7.4(d). Only after probable cause does staff counsel "review and file the formal complaint and provide a copy to the respondent" and request a referee. R. 3-7.4(l). "Proceedings after assignment of a referee are adversary proceedings." R. 3-7.6(b). The committee found probable cause on July 15, 2026. Doc. 34-1 ¶ 9. Defendants identify no formal complaint, no referee, and no case number. Where no state

proceeding is pending, federal relief "does not result in duplicative legal proceedings or disruption of the state criminal justice system." *Steffel v. Thompson*, 415 U.S. 452, 462 (1974).

**B. The bad-faith exception—which the motion never mentions.**

*Younger* deference is reserved for enforcement in good faith. *Younger v. Harris*, 401 U.S. 37, 54 (1971). It does not protect a proceeding brought "without a reasonable expectation" of a valid outcome, *Redner v. Citrus Cnty.*, 919 F.2d 646, 650 (11th Cir. 1990), or one "brought in retaliation for or to deter the exercise of constitutionally protected rights," *Wilson v. Thompson*, 593 F.2d 1375, 1387 (5th Cir. 1979). A retaliatory proceeding may be enjoined "regardless of whether valid convictions conceivably could be obtained," *Fitzgerald v. Peek*, 636 F.2d 943, 945 (5th Cir. Jan. 1981) (per curiam). *Wilson* and *Fitzgerald* bind this Court. *Bonner*, 661 F.2d at 1209.

The complaint pleads every element of the exception. The Bar put Plaintiff under oath and questioned him about his future political activity, which bears on nothing charged. Doc. 33 ¶¶ 15–16. It reassigned the investigation to the prosecutor herself, went silent for ten months, and broke that silence with a notice of committee review issued Friday, April 17, 2026. That was the business day before judicial qualifying week. *Id.* ¶ 17. Six days after the Supreme Court of Florida held Rule 4-8.2(a) unconstitutional as applied to a candidate's campaign speech, *The Florida Bar v. Crowley*, No. SC2020-0529 (Fla. July 9, 2026) (reh'g denied), the committee advanced all thirty-three provisions charged under that rule and eliminated none. *Id.* ¶ 33; Doc. 34-1 ¶ 9. A committee that eliminated

nothing did not ask whether *Crowley* reached these charges. Seven matters and thirty-three provisions arise from one candidate's campaign speech. The complaints against his opponent in the same election produced no consequence at all. Doc. 33 ¶¶ 30–34.

Florida has already said what good faith requires. Every member of its Bar swears: "I will not counsel or maintain any suit or proceedings which shall appear to me to be unjust," and "I will never . . . delay anyone's cause for lucre or malice." Oath of Admission to The Florida Bar. Plaintiff pleads no claim on the oath; he offers it as the measure Florida itself chose. By that measure, maintaining these charges is unjust.

*Landmark* has been the law of the land for nearly half a century, and the principle it applied from *Bridges* for eighty-five years. Yet the Bar is prosecuting Plaintiff for TRUTHFUL statements about a judge—statements drawn from the judge's book and from public records. Doc. 33 ¶¶ 10, 36. Before he spoke, Plaintiff obtained the judge's military service records through a Freedom of Information Act request, and every factual statement he made about the judge was supported by a document he had in hand before he made it. Doc. 33 ¶ 10. Every one of the seven matters exists because Plaintiff told the truth about a sitting judge. Doc. 33 ¶¶ 11, 33, 37–38. One was a referral from the judge himself. Doc. 33 ¶ 11. The dismissed complaint, which Plaintiff asks leave to restore, pleads that another was filed by the judge's wife and the longest by a member of his campaign host committee, whose complaint opens: "I am helping Craig McCarthy in his campaign for reelection." Doc. 8 ¶¶ 41, 49, 63, 113, 138. She did not hide why she

filed. Trimming the charges about the judge would not cure the proceeding. A prosecution that punishes speech the Supreme Court has protected for generations has no reasonable expectation of a valid outcome. That is bad faith, and it is exactly what *Younger* leaves to the federal courts to stop.

**C. The state forum is not adequate, and abstention cannot reach several counts.**

The adequacy premise "naturally presupposes the opportunity to raise and have timely decided by a competent state tribunal the federal issues involved." *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973). Here the prosecutor decided how Plaintiff may participate in the very proceeding she prosecutes. Bailey, whom the Bar named as responsible, never spoke to him, and Doyle did nothing when told. Doc. 33 ¶¶ 21–25. That is not an adequate forum. It is the prosecution controlling the defense.

Some counts are beyond *Younger*'s reach entirely. Count VIII asks that a photograph come down from the reception area; no tribunal is adjudicating that. Count IV asks for an ADA coordinator and a grievance procedure that no grievance committee can order. *Middlesex* conditions abstention on "an adequate opportunity in the state proceedings to raise constitutional challenges," *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982), and that condition fails where the forum cannot grant the relief. Counts V, VI, and VII seek damages no disciplinary proceeding can award, and a district court "has no

discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding." *Deakins v. Monaghan*, 484 U.S. 193, 202 (1988).

**VIII. QUALIFIED IMMUNITY CANNOT CARRY THE MOTION.**

Qualified immunity "is a defense only to claims for monetary relief." *D'Aguanno v. Gallagher*, 50 F.3d 877, 879 (11th Cir. 1995). It has nothing to say about Counts I through IV and IX, about Count VIII against Morrison in her official capacity, *Kentucky v. Graham*, 473 U.S. 159, 167 (1985), or about The Florida Bar.

As to Counts V through VII, Defendants do not answer the claims; they rewrite them. The claim against Doyle is not that an Executive Director is liable "for not . . . responding to a letter." Doc. 45 at 17. It is that the official responsible for designating an ADA coordinator was told in writing that none existed and did nothing. Doc. 33 ¶¶ 59–60. The claim against Bailey is pleaded in the alternative, as Rule 8(d)(2) allows. *Id.* ¶¶ 63–67.

Defendants' authority does not help them.[3] Plaintiff need not find a case on identical facts; "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). And the rights here are not novel. A lawyer is entitled to fair process before he is punished, *Ruffalo*, 390 U.S. at 550–51, and the State may not publicly stigmatize a person and alter his legal status without notice and an opportunity to be heard, *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971); *see Paul v. Davis*, 424 U.S. 693,

3 The motion demands a precision it does not supply. It cites one en banc decision of the Eleventh Circuit to a reporter that does not exist and another to one which exists only floating 55 pages out in the void between the 'Duke of Duval's' mail fraud appeal rounding out vol. 268 and the tale of Coconut Grove Bank's failure to honor a cashier's check heading up 269—"338 Fl. 3d 1304" for *Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003) (en banc), and "268 F.2d 1014" for *Marsh v. Butler County*, 268 F.3d 1014 (11th Cir. 2001) (en banc). Doc. 45 at 7, 17.

708–09 (1976). A photograph in a reception area with an instruction to call security does exactly that. Those rules are decades old.

## CONCLUSION

For the reasons above, the Court should deny the motion to dismiss.

Dated: October 20, 2026
Respectfully submitted,

/s/ Stephen Christopher Brown
Stephen Christopher Brown
509 S. Chickasaw Trail #286
Orlando, Florida 32825
(407) 956-2172
stephen@brownandrice.com
Plaintiff, Pro Se (Fla. Bar No. 43406)

The certification required by the Standing Order on the use of artificial intelligence (Doc. 31) is filed as an attachment to this response.

## CERTIFICATE OF SERVICE

I certify that on October 20, 2026, I filed this response with the Clerk of Court using the CM/ECF system, which will serve a copy on all counsel of record, including John Londot, Esq., Greenberg Traurig, P.A., counsel for the Florida Bar Defendants, at londotj@gtlaw.com, hoffmannm@gtlaw.com, and tallitdock@gtlaw.com.

/s/ Stephen Christopher Brown