UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

STEPHEN CHRISTOPHER BROWN,
Plaintiff,

v. Case No. 6:26-cv-01481-AGM-RMN

THE FLORIDA BAR; ASHLEY MORRISON, in her official and individual capacities; JOSHUA E. DOYLE, in his official and individual capacities; GYPSY BAILEY, in her official and individual capacities; and JOHN/JANE DOE(S), unknown official(s) of The Florida Bar, in their official and individual capacities,
Defendants.
_________________________________/

**VERIFIED THIRD AMENDED COMPLAINT**

COMES NOW Plaintiff Stephen Christopher Brown, pro se, and sues Defendants The Florida Bar, Ashley Morrison, Joshua E. Doyle, Gypsy Bailey, and John/Jane Doe(s), and alleges:

1. Plaintiff Stephen Christopher Brown is a natural person, a resident of Orange County, Florida, and a member in good standing of The Florida Bar, admitted in 2007. Plaintiff was a candidate for Circuit Judge in the Ninth Judicial Circuit

in the 2024 election. Plaintiff is an adult living with autism, a condition that qualifies as a disability under 42 U.S.C. § 12102.

2. Defendant The Florida Bar is an official arm of the Supreme Court of Florida, created under Article V, Section 15 of the Florida Constitution, responsible for the regulation and discipline of Florida attorneys, and a public entity within the meaning of 42 U.S.C. § 12131(1). It operates a branch office in Orlando, Florida, and is subject to personal jurisdiction in Florida.

3. Defendant Ashley Morrison is Bar Counsel in The Florida Bar's Orlando Branch Office, where she directs the disciplinary proceedings against Plaintiff described below. She acts in Orange County, Florida, and is subject to personal jurisdiction in Florida. She is sued in her official capacity for prospective injunctive relief and in her individual capacity for damages.

4. Defendant Joshua E. Doyle is the Executive Director of The Florida Bar, with administrative authority over Bar-wide policy, including the designation of an ADA coordinator and accommodation procedures under 28 C.F.R. § 35.107. He performs those duties in and directed at Florida and is subject to personal jurisdiction here. He is sued in his official capacity for prospective injunctive relief and in his individual capacity for damages.

5. Defendant Gypsy Bailey is General Counsel of The Florida Bar. Morrison represented to Plaintiff that the Bar's General Counsel reviewed Plaintiff's

accommodation request and approved the Bar's course of action. Bailey performs her duties in and directed at Florida and is subject to personal jurisdiction here. She is sued in her official capacity for prospective injunctive relief and in her individual capacity for damages.

6. Defendants John/Jane Doe(s) are the presently unidentified official(s) or employee(s) of The Florida Bar who ordered, approved, or maintained the notice described in paragraphs 42 through 45 below. Their identities are peculiarly within Defendants' knowledge and will be substituted by amendment upon discovery. They are sued in their official capacities for prospective injunctive relief and in their individual capacities for damages.

7. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)–(4) because this action arises under the First and Fourteenth Amendments, 42 U.S.C. § 1983, and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq., and under 28 U.S.C. §§ 2201–2202 for declaratory relief.

8. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events — the disciplinary proceedings prosecuted from the Bar's Orlando Branch Office — occurred and are occurring in Orange County, Florida, within this District and Division.

9. Plaintiff demands trial by jury on all counts so triable.

**GENERAL ALLEGATIONS**

10. Plaintiff announced his candidacy for Circuit Judge on June 1, 2023, challenging a sitting Circuit Judge. During the campaign Plaintiff made statements on social media and his campaign website concerning his opponent's record and fitness for office. Many of the charged statements are quotations from, or descriptions of, the opponent's own published book; others state the contents of public records Plaintiff obtained before speaking, including military service records obtained by Freedom of Information Act request.

11. Following the announcement, the Bar received complaints against Plaintiff arising from his campaign speech, including Bar File No. 2025-30,068(9B), a referral from Plaintiff's judicial opponent alleging that Plaintiff's campaign posts violated Rules Regulating The Florida Bar 4-8.2 and 4-8.4.

12. Among the statements for which the Bar prosecutes Plaintiff are his statements about Tiffaney McCarthy, wife of Plaintiff's opponent, Judge Craig McCarthy, who was a sitting judge during the campaign. Mrs. McCarthy effectively ran the campaign. Her Mini Cooper was wrapped in campaign branding. She attended every event, handed out QR-code donation cards, and spoke to the media for the campaign.

13. During the campaign, Mrs. McCarthy asked a disgruntled former friend of Plaintiff, who was using a fake name and told her so, for information about Plaintiff, and then invited him to meet with the judge to give them more. Twice

in those messages, she assured him of discretion. Exhibit 1 (marked "Exhibit M" in the complainant's rebuttal).

14. Plaintiff's online statements about those messages were true. A complainant gave the messages to the Bar herself, in her rebuttal to Plaintiff's response. The Bar has the messages and continues to prosecute Plaintiff for describing them.

15. The Bar calls Plaintiff's statements unprofessional and damaging to the reputation of the judiciary. They were neither. They were a factual account, written with a touch of humor because they were posted on Facebook. Any damage to the judiciary was done by the judge and his wife, not by Plaintiff.

16. Even if the statements had harmed the reputation of the judiciary, they would be protected. Injury to official reputation is not a reason to suppress speech that would otherwise be free. *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 841–42 (1978). "The assumption that respect for the judiciary can be won by shielding judges from published criticism wrongly appraises the character of American public opinion." *Id.* at 842 (quoting *Bridges v. California*, 314 U.S. 252, 270 (1941)).

17. The Bar acts as an arm of the Supreme Court of Florida. It prosecutes Plaintiff for accurately describing a sitting judge's campaign, while its own file proves the description true. That forum is not adequate for Plaintiff's First Amendment claims.

18. By letter dated August 9, 2024, the Bar advised Plaintiff that File No. 2025-30,068(9B) was subject to review under Rule Regulating The Florida Bar 3-7.18 — the rule then according elevated treatment to judicial referrals.

19. By opinion dated August 28, 2025, effective October 27, 2025, the Florida Supreme Court amended Rule 3-7.18's definition of judicial referral to exclude election-related complaints and to require that the referring judicial officer have obtained the underlying information in the course of official judicial duties. See In re: Amendments to Rules Regulating The Florida Bar — Discipline Rules, No. SC2025-0019 (Fla. Aug. 28, 2025).

20. File No. 2025-30,068(9B) satisfies neither requirement of the amended definition: it is election-related, and the referring judge's knowledge of Plaintiff's campaign conduct arose from his position as Plaintiff's electoral opponent, not from any judicial function. The Bar has nonetheless continued to process and prosecute the matter.

21. On February 26, 2025, Morrison personally conducted a sworn statement of Plaintiff. She asked whether Plaintiff had any intent to run for judicial office again, and asked about Plaintiff's stated plan to form a political committee concerning judicial transparency — what it was and what its purpose would be.

22. Neither question bears on whether Plaintiff committed the past misconduct alleged in the referred complaints; both probe Plaintiff's intended future protected political activity.

23. After Plaintiff's February 26, 2025 sworn statement, the Bar took no substantive action on the referred complaints; its last communication concerning them was a June 11, 2025 notice reassigning the investigation to Morrison. Ten months of silence concerning those complaints followed, ending when the Bar issued a notice of grievance-committee review on April 17, 2026 — the Friday before the judicial qualifying week in which Plaintiff would have had to qualify to run for judicial office in the 2026 cycle.

24. The Bar maintains published accommodation procedures for complainants, but no published ADA coordinator, no named contact, and no grievance procedure for attorneys who are respondents in disciplinary proceedings, as 28 C.F.R. § 35.107 requires of public entities with 50 or more employees.

25. On April 30, 2026, Plaintiff submitted a formal accommodation request under Title II, identifying his autism and requesting a 30-day extension and an in-person appearance before the Grievance Committee to ensure effective participation.

26. At Morrison's request for medical support, Plaintiff's treating mental-health therapist — who had adopted the autism diagnosis in the course of treatment —

answered the Bar's questions and sent her letter directly to Morrison. The letter stated that Plaintiff has a clinically documented disability qualifying under the ADA; that his verbal skills are strongest in structured, rule-based environments such as a courtroom; that he experiences sensory-overload and processing limitations with intricate written communication, requiring additional time; and that he requires accommodation to give his statement orally. Morrison confirmed receipt and never advised Plaintiff the letter was insufficient.

27. On June 1, 2026, without consulting Plaintiff, Morrison unilaterally substituted a video-recording submission — an unstructured, non-interactive format — for the structured in-person appearance the therapist's letter identified as the environment in which Plaintiff communicates best. The substitution was communicated by a one-line email from a secretary attaching a notice of Grievance Committee meeting. That notice was the same form notice Plaintiff had received previously, altered by a few words to state that a statement could be submitted by video recording in a specified file format. It did not refer to the Americans with Disabilities Act, did not refer to Plaintiff's pending accommodation request, and did not identify any person as having made any determination. No written decision identified the decision-maker, referenced Plaintiff's request, or explained the substitution. The Bar provided no

equipment, no facility, no technical assistance, and no alternative means of making the submission, leaving Plaintiff to produce the recording himself.

28. Plaintiff is autistic. In structured settings governed by logic and rules, such as a courtroom, where it is settled who speaks, when, and how, Plaintiff performs at his best. In that setting he does better than the average lawyer.

29. Plaintiff does not experience sensory overload when he represents clients. He cares about his clients and works hard for them. He does not take their disputes personally, so their disputes do not overload him.

30. When Plaintiff himself is attacked, cornered, and afraid, he experiences sensory overload. Sensory overload causes Plaintiff to freeze. The freeze is a physical response that Plaintiff cannot control.

31. Plaintiff speaks and writes without emotional inflection. Readers often take that style as rude, though Plaintiff intends no rudeness. Plaintiff is blunt, which is a common autistic trait. In the practice of law, the same style serves Plaintiff well, because it states only facts and rules.

32. The Bar's grievance process put Plaintiff in exactly the conditions that cause sensory overload. Plaintiff gave the Bar evidence that the complainants' statements were false. Much of that evidence was the complainants' own. Plaintiff returned their photographs to the Bar with explanations showing that what the complainants said could not be true. During his sworn statement to the

Bar, Plaintiff submitted as exhibits the public records on which his statements were based. Those records show that the statements were true. He also submitted, in full, the book he had quoted from, so that every quotation could be checked against its source. The Bar's Second Amended Notice of Grievance Committee Review lists, among the documents the committee "will consider," the "[t]ranscript of the sworn statement of Stephen Christopher Brown dated February 26, 2025, with exhibits." Plaintiff also gave the committee *The Florida Bar v. Crowley*, No. SC2020-0529 (Fla. July 9, 2026), decided days earlier. In *Crowley*, the Supreme Court of Florida held Rule 4-8.2(a) unconstitutional as applied to a candidate's campaign speech about a fellow candidate for state attorney. The Bar pursued the complaints anyway. Plaintiff understood from this that the Bar did not intend to weigh his evidence. He still experiences sensory overload when he thinks about it.

33. At the same time, Plaintiff knew that anything he wrote to the grievance committee would read to its members as rude. That knowledge added to the overload.

34. Plaintiff asked to give his statement in person so that he could communicate effectively in that setting. A communicative autistic person learns to watch the people he is speaking to and to judge their small reactions consciously, in order to communicate the way a neurotypical person does without thinking. In person,

Plaintiff can see how he is being understood and correct it as he goes. A written statement does not allow that. A video statement does not allow it either. A video would still have required Plaintiff to write a script, under the same conditions that cause him to freeze.

35. Allowing Plaintiff to appear in person would have cost the Bar nothing. On information and belief, the Bar did not allow it because Plaintiff, speaking directly to the grievance committee, would have shown the committee that the Bar's own evidence proves the opposite of what the Bar alleges.

36. Before the meeting, Plaintiff sent the committee a lengthy written statement. Because of the sensory overload described above, he could not finish it, and he sent the best version he could. He sent more material on the day of the meeting. The committee voted thirty-three findings anyway. On information and belief, with Plaintiff absent, the committee did not review his evidence before it voted.

37. The request concerned only the grievance setting. It has nothing to do with Plaintiff's ability to practice law.

38. Plaintiff wrote to Morrison citing the federal regulations requiring primary consideration of the requested accommodation, asking whether the denial was authorized as 28 C.F.R. § 35.164 requires, and asking who at the Bar handles ADA compliance. Morrison never responded to those inquiries.

39. Bailey never communicated with Plaintiff regarding his accommodation request at any point, and never responded to Plaintiff's inquiry, relayed through Morrison, as to who was making the decision.

40. On June 17, 2026, Plaintiff emailed Doyle directly, detailing the accommodation denial, citing the governing Title II regulations, identifying Morrison's dual role as prosecutor and de facto accommodation decision-maker, and requesting review and a response within 24 hours.

41. Doyle took no action: he did not respond, did not review the denial, did not refer the request to any ADA coordinator, and did not cause the Bar to give the request the consideration the regulations require.

42. Since a date presently unknown to Plaintiff and continuing through at least August 14, 2026 (on information and belief, formed on the firsthand account, related to Plaintiff that day, of a person who had worked in that office), The Florida Bar has displayed at the reception area of its Orlando Branch Office, in a location visible to members of the public conducting business there, a notice bearing a photograph of Plaintiff and directing staff not to allow Plaintiff to enter and to call security. A photograph of the notice is not attached to this pleading; its content is alleged on the personal observation of witnesses.

43. The notice was displayed within public view at the office from which Morrison directs the disciplinary proceedings against Plaintiff, and it was in fact seen by

at least one member of the public with no involvement in Plaintiff's disciplinary matters.

44. No factual basis existed for the notice: Plaintiff has never visited the Orlando Branch Office, has never been involved in any incident at any Bar facility, has never been issued a trespass warning by the Bar or anyone else, and has never threatened any Bar employee.

45. The notice remained displayed after the conclusion of the grievance-committee proceeding that could have supplied any conceivable protective rationale, and Defendants have never notified Plaintiff of its existence or afforded him any opportunity to contest it.

46. In Florida, complaints about the campaign conduct of a judge candidate are addressed by the Judicial Qualifications Commission; complaints about the campaign conduct of an attorney candidate for the same office are addressed by The Florida Bar.

47. An attorney candidate and a judge candidate for the same judicial office engage in the same campaign activity and are subject to the same campaign-conduct standards.

48. Complaints about campaign conduct were made against both candidates in the same election. Plaintiff reported his opponent's campaign conduct to the Commission, including campaign business cards bearing a QR code resolving

to a webpage on which a donation button was prominently displayed, and the dissemination by his opponent's campaign-committee spouse of false and disparaging information about Plaintiff. Those complaints are concluded: the Commission took no action, asked Plaintiff not one question, provided its disposition letter only after three voicemail messages and two certified letters, and Plaintiff's opponent has received no discipline, no reprimand, and no consequence of any kind.

49. The complaints against Plaintiff arising from the same election remain in active prosecution more than two years later: The Florida Bar consolidated seven complaints — every one targeting his speech — and advanced all thirty-three charged rule provisions to a probable-cause finding, eliminating none.

50. The Judicial Qualifications Commission dismissed Plaintiff's reports without opening an investigation; on information and belief, it contacted no witness and sought no records. As applied to candidates in judicial elections, the disciplinary framework has produced disparate outcomes for the same categories of campaign conduct in the same election, to the advantage of the incumbent judge and the detriment of the attorney candidate who challenged him.

**COUNT I**
**42 U.S.C. § 1983 — First Amendment Retaliation**
**(Morrison, Official Capacity — Injunctive Relief Only)**

51. Plaintiff realleges paragraphs 1 through 9 and 10 through 23.

52. Plaintiff's campaign statements were core political speech protected by the First Amendment.

53. Acting under color of state law, Morrison has continued to prosecute disciplinary proceedings arising from that protected speech; the prosecution is an adverse action that would deter a person of ordinary firmness from engaging in judicial-campaign speech.

54. The protected speech is a substantial motivating cause of the continued prosecution, as shown by the content of the referred complaints, the sworn-statement questions about Plaintiff's future political activity, and the qualifying-week timing of the review notice.

55. The violation is ongoing; Plaintiff seeks only prospective injunctive relief against Morrison in her official capacity to end it, and has no adequate remedy at law.

**COUNT II**
**42 U.S.C. § 1983 — Equal Protection**
**(Morrison, Official Capacity — Injunctive Relief Only)**

56. Plaintiff realleges paragraphs 1 through 9 and 10 through 20.

57. Under the amended Rule 3-7.18, election-related complaints no longer qualify as judicial referrals; similarly situated respondents whose complaints are election-related are not subjected to the judicial-referral track.

58. Acting under color of state law, Morrison continues to classify and process Plaintiff's election-related complaint on the footing of a judicial referral,

treating Plaintiff differently from those similarly situated respondents without rational basis, and burdening core political speech.

59. The violation is ongoing; Plaintiff seeks only prospective injunctive relief against Morrison in her official capacity.

**COUNT III**
**42 U.S.C. § 1983 and 28 U.S.C. § 2201 — First and Fourteenth Amendments: Continued Application of Former Rule 3-7.18**
**(Doyle, Official Capacity — Declaratory and Prospective Injunctive Relief)**

60. Plaintiff realleges paragraphs 1 through 9 and 10 through 20.

61. An actual controversy exists as to whether former Rule 3-7.18's elevated-review mechanism for judicial referrals was constitutional, facially and as applied to Plaintiff's election-related complaint, and whether its continued application to Plaintiff after the amendment is lawful.

62. Facially, the former rule's automatic elevated review of judicial referrals — including election-related complaints — imposed a content- and speaker-based burden on political speech without adequate tailoring to any legitimate regulatory interest.

63. As applied, continuing to treat File No. 2025-30,068(9B) as a judicial referral is unconstitutional because the amendment repudiated precisely that application, and because the referral never satisfied the amended rule's official-duties requirement.

64. Acting under color of state law, Doyle, through the Bar he administers, continues to process File No. 2025-30,068(9B) under the former rule's elevated treatment. That continuing application violates the First and Fourteenth Amendments. Plaintiff seeks a declaration to that effect and an injunction against continuing to treat the file as a judicial referral. A declaratory judgment will resolve this controversy.

**COUNT IV**
**Title II of the ADA, 42 U.S.C. § 12131 et seq.**
**(The Florida Bar, Doyle, and Bailey, Official Capacity — Injunctive Relief Only)**

65. Plaintiff realleges paragraphs 1 through 9 and 24 through 41.

66. The Bar is a public entity; Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. § 12131(2).

67. The Bar's failure to designate a published ADA coordinator and respondent-side grievance procedure as required by 28 C.F.R. § 35.107, while maintaining accommodation procedures for complainants; its substitution of an accommodation Plaintiff did not request without giving primary consideration to Plaintiff's requested accommodation as required by 28 C.F.R. §§ 35.160(b)(1) and 35.160(b)(2) and without authorization under 28 C.F.R. § 35.164; and its failure to make available information regarding Title II's applicability to its proceedings as required by 28 C.F.R. § 35.106, denied Plaintiff the benefits of its services, programs, and activities by reason of his disability.

68. Plaintiff seeks an injunction requiring the Bar to designate and publish an ADA coordinator, adopt a published grievance procedure for attorney respondents, and give Plaintiff's pending request the consideration 28 C.F.R. §§ 35.160(b)(2) and 35.164 require.

**COUNT V**
**42 U.S.C. § 1983 — Fourteenth Amendment Procedural Due Process; in the Alternative, First Amendment Retaliation**
**(Morrison, Individual Capacity — Damages)**

69. Plaintiff realleges paragraphs 1 through 9 and 24 through 41.

70. After Plaintiff requested accommodation on April 30, 2026, Morrison acted as the Bar's de facto accommodation decision-maker. The Bar had designated no ADA coordinator and published no grievance procedure for attorney respondents. Morrison requested and received the medical support for Plaintiff's request. On June 1, 2026, without consulting Plaintiff, she substituted a video-recording format for the structured in-person appearance his treating therapist identified as the setting in which he communicates effectively. She issued no written decision, identified no decision-maker, and never answered Plaintiff's inquiries about who had decided his request. Deciding how a respondent may be heard is an administrative function, not the advocacy function of a prosecutor, and it is not protected by absolute immunity.

71. Plaintiff has a protected property and liberty interest in his license to practice law, and a disciplinary proceeding against that license must afford due process.

*In re Ruffalo*, 390 U.S. 544, 550 (1968). Acting under color of state law, Morrison decided how Plaintiff could be heard in the proceeding she was prosecuting, without notice, without an identified decision-maker, without reasons, and without any review. She thereby deprived Plaintiff of a meaningful opportunity to be heard, in violation of the Due Process Clause of the Fourteenth Amendment.

72. In the alternative, Plaintiff's protected speech was a substantial or motivating factor in Morrison's handling of his request, as shown by her simultaneous role as the prosecutor of complaints arising from that speech and by the absence of any written decision, identified decision-maker, or explanation. Having the means of participating in one's own defense chosen by one's prosecutor, in the format least suited to one's documented disability, would deter a person of ordinary firmness from protected speech.

73. As a direct and proximate result, Plaintiff suffered damages, including emotional distress and impairment of his ability to participate in his own defense. Morrison's conduct was undertaken with reckless or callous indifference to Plaintiff's federally protected rights. Plaintiff seeks compensatory damages, punitive damages, and fees and costs under 42 U.S.C. § 1988.

**COUNT VI**

**42 U.S.C. § 1983 — First Amendment Retaliation**
**(Morrison, Individual Capacity — Damages)**

74. Plaintiff realleges paragraphs 1 through 9, 10 through 23, and 24 through 39.

75. Plaintiff's campaign statements and his stated plans for future political activity, including a political committee concerning judicial transparency, are speech and association protected by the First Amendment.

76. This Count does not challenge Morrison's decision to prosecute or any act of advocacy in presenting the Bar's case. It challenges conduct outside that function: her investigative questioning of Plaintiff on February 26, 2025.

77. Investigative conduct. On February 26, 2025, acting under color of state law, Morrison used a sworn statement concerning alleged past conduct to question Plaintiff about whether he intended to run for judicial office again and about the purpose of his planned political committee. Those questions concerned no element of any charged rule violation. They probed Plaintiff's future protected political activity.

78. Those questions were not asked to prove any charged rule violation. A prosecutor's inquiry into a person's future political plans is investigative conduct.

79. Questioning a respondent about his future political activity is not the advocacy function of a prosecutor. It is not protected by absolute immunity.

80. Morrison's conduct would deter a person of ordinary firmness from engaging in judicial-campaign speech and from planning future political activity. Being questioned under oath by one's prosecutor about one's political plans is an adverse action that would chill protected speech.

81. Plaintiff's protected speech was a substantial or motivating factor in Morrison's conduct, as shown by: (a) the content of the sworn-statement questions, which addressed only Plaintiff's future political activity; (b) Morrison's role as the prosecutor of complaints arising from that very speech; and (c) the timing of the April 17, 2026 notice of grievance-committee review, issued after ten months of inaction on the Friday before judicial qualifying week.

82. At the time of this conduct, it was clearly established in this Circuit that a government official may not take adverse action against a person in retaliation for protected political speech. See Bennett v. Hendrix, 423 F.3d 1247 (11th Cir. 2005). A state official sued in her individual capacity is a "person" subject to suit for damages under § 1983. Hafer v. Melo, 502 U.S. 21 (1991).

83. As a direct and proximate result, Plaintiff suffered damages, including emotional distress, harm to his professional reputation, and impairment of his ability to participate in his own defense.

84. Morrison's conduct was undertaken with reckless or callous indifference to Plaintiff's federally protected rights. Plaintiff seeks compensatory damages, punitive damages, and fees and costs under 42 U.S.C. § 1988.

**COUNT VII**
**42 U.S.C. § 1983 — Fourteenth Amendment Procedural Due Process: Supervisory Liability**
**(Doyle, Individual Capacity — Damages)**

85. Plaintiff realleges paragraphs 1 through 9 and 24 through 41.

86. As Executive Director, Doyle has administrative authority over Bar-wide policy, including whether the Bar designates an ADA coordinator and how a respondent may obtain a decision about how he will be heard. These are administrative functions, not prosecutorial ones.

87. On June 17, 2026, Doyle received actual written notice that the Bar Counsel prosecuting Plaintiff was also deciding how Plaintiff could be heard, with no coordinator, no identified decision-maker, and no review. With deliberate indifference, he took no action. His failure to act after actual notice is causally connected to the continuing deprivation alleged in Count V.

88. As a direct and proximate result, Plaintiff suffered damages as alleged in paragraph 73. Doyle's conduct was undertaken with reckless or callous indifference to Plaintiff's federally protected rights. Plaintiff seeks compensatory damages, punitive damages, and fees and costs under 42 U.S.C. § 1988.

**COUNT VIII**
**42 U.S.C. § 1983 — Procedural Due Process**
**(Bailey, Individual Capacity — Damages)**

89. Plaintiff realleges paragraphs 1 through 9 and 24 through 39.

90. Morrison represented to Plaintiff that the Bar's General Counsel had reviewed Plaintiff's accommodation request and approved the Bar's course of action. Bailey is the Bar's General Counsel.

91. Pursuant to Federal Rule of Civil Procedure 8(d)(2), Plaintiff pleads the following two paragraphs in the alternative.

92. First alternative: Morrison's representation was accurate. Bailey reviewed Plaintiff's accommodation request, had actual knowledge of it, possessed authority to grant it, and approved the substitution of an accommodation Plaintiff had not requested without giving primary consideration to the accommodation Plaintiff did request.

93. Second alternative: Morrison's representation was not accurate, and Bailey did not review Plaintiff's request. On information and belief, Bailey was the official the Bar identified as responsible for its accommodation decisions, the only official it identified to Plaintiff in that role, and she had the duty and the authority to decide Plaintiff's request. Plaintiff's inquiry about who was deciding his request was relayed to her through Morrison. With deliberate indifference, Bailey neither decided the request nor answered the inquiry.

94. Under either alternative, acting under color of state law, Bailey deprived Plaintiff of a meaningful opportunity to be heard in a proceeding that may deprive him of a protected property interest in his license to practice law.

95. As a direct and proximate result, Plaintiff suffered damages as alleged in paragraph 73. Bailey's conduct was undertaken with reckless or callous indifference to Plaintiff's federally protected rights. Plaintiff seeks compensatory damages, punitive damages, and fees and costs under 42 U.S.C. § 1988.

**COUNT IX**
**42 U.S.C. § 1983 — Fourteenth Amendment Procedural Due Process (Stigma-Plus)**
**(Morrison, Official Capacity — Injunctive Relief; John/Jane Doe(s), Official and Individual Capacities)**

96. Plaintiff realleges paragraphs 1 through 9 and 42 through 45.

97. Acting under color of state law, Defendants published a stigmatizing statement about Plaintiff: the notice, displayed to the public, falsely implies that Plaintiff is dangerous and has engaged or will engage in conduct warranting exclusion by security — an implication injurious to Plaintiff's reputation and profession, and false, as alleged in paragraph 44.

98. The publication was coupled with an alteration of Plaintiff's rights and status: exclusion from the public office of the agency that administers Plaintiff's own pending disciplinary proceedings, burdening his ability to participate in and defend those proceedings.

99. Defendants afforded Plaintiff no notice of the publication and no opportunity — before or since — to contest it. This deprivation of liberty without any process violates the Fourteenth Amendment.

100. The publication is ongoing. Plaintiff seeks prospective injunctive relief requiring removal of the notice and any successor, and a declaration that its publication was unlawful; against the John/Jane Doe official(s) responsible, in their individual capacities, Plaintiff seeks compensatory and punitive damages and fees and costs under 42 U.S.C. § 1988.

**COUNT X**
**42 U.S.C. § 1983 — Equal Protection: Unequal Enforcement Against Candidates for the Same Office**
**(Morrison, Official Capacity — Injunctive Relief Only)**

101. Plaintiff realleges paragraphs 1 through 9 and 46 through 50.

102. Plaintiff and his opponent were candidates for the same judicial office in the same election, engaged in campaign activity subject to the same campaign-conduct standards. The State's interests in regulating that conduct — the fairness of the election and the integrity of the judiciary — do not differ between the two candidates.

103. The State nevertheless routes the two candidates to different disciplinary systems based on incumbent status: complaints concerning the sitting judge go to the Judicial Qualifications Commission, while complaints concerning Plaintiff go to The Florida Bar. That differential routing of candidates for the

same office, for the same category of conduct, is itself a denial of the equal protection of the laws. Either both candidates face the same forum and process, or neither faces discipline for campaign conduct.

104. Acting under color of state law, Morrison subjects Plaintiff to consolidated, escalating, and still-active enforcement more than two years on, while the complaints against his opponent for campaign conduct in the same election concluded with no action and no consequence of any kind. The differentiating variable is not conduct; it is that Plaintiff is the attorney challenger whose campaign speech criticized a sitting judge.

105. This unequal enforcement of common campaign-conduct standards against candidates for the same office, keyed to the exercise of protected speech, lacks a rational basis, still less a compelling one.

106. The violation is ongoing; Plaintiff seeks only prospective injunctive relief against Morrison in her official capacity.

COUNT XI
Title II of the ADA, 42 U.S.C. § 12132 — Damages
(The Florida Bar)

107. Plaintiff realleges paragraphs 1 through 9 and 24 through 41.

108. The Bar is a public entity. It administers attorney discipline as the official arm of the Supreme Court of Florida. A grievance proceeding decides whether formal charges will be brought against a lawyer's license. Access to that proceeding is access to the judicial process.

109. By reason of his disability, the Bar denied Plaintiff meaningful access to that proceeding, as alleged in paragraphs 25 through 41 and in Count IV.

110. The Bar acted with deliberate indifference. Doyle, an official with authority to address the violation and to institute corrective measures, had actual knowledge of it by June 17, 2026, and did not respond.

111. Title II validly abrogates the State's sovereign immunity as applied to access to judicial proceedings, *Tennessee v. Lane*, 541 U.S. 509 (2004), and as applied to conduct that also violates the Fourteenth Amendment, *United States v. Georgia*, 546 U.S. 151 (2006). The conduct alleged here also violates the Due Process Clause, as alleged in Count V.

112. Plaintiff seeks compensatory damages against the Bar.

COUNT XII
42 U.S.C. § 1983 — First and Fourteenth Amendments: Rules Applied to Campaign Speech
(Morrison and Doyle, Official Capacity — Declaratory and Injunctive Relief)

113. Plaintiff realleges paragraphs 1 through 9 and 10 through 23.

114. The Bar has charged Plaintiff's campaign speech under Rule 4-8.2(a), Rule 4-8.2(b), Rule 3-4.3, Rule 4-8.4(d), and the civility provision of the Oath of Admission to The Florida Bar.

115. Speech about candidates for public office receives the highest protection of the First Amendment, and that protection extends to candidates for judicial office. *Republican Party of Minn. v. White*, 536 U.S. 765 (2002). The Supreme

Court of Florida has held that applying Rules 4-8.2(a) and 3-4.3 to a candidate's campaign statements about a fellow candidate violates the First Amendment. *The Florida Bar v. Crowley*, No. SC2020-0529 (Fla. July 9, 2026).

116. As applied to Plaintiff's campaign speech, each of these provisions is a content-based restriction that is not narrowly tailored to a compelling state interest.

117. No rule defines "civility," "unprofessional," or "disparaging," the terms under which the Bar charges Plaintiff's speech. As applied to campaign speech, those terms give no fair notice of what is forbidden and invite enforcement based on viewpoint, in violation of the First and Fourteenth Amendments.

118. Plaintiff seeks a declaration that these provisions are unconstitutional as applied to his campaign speech, and an injunction against their enforcement against that speech.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

1. Declare that Defendants' continued prosecution of Plaintiff's election-related complaint as a judicial referral violates the First and Fourteenth Amendments, and that former Rule 3-7.18 was unconstitutional facially and as applied to Plaintiff;
2. Preliminarily and permanently enjoin Morrison, in her official capacity, from continuing to classify or prosecute the disciplinary matters described

herein on the basis of Plaintiff's protected campaign speech or as a judicial referral;

3. Preliminarily and permanently enjoin Morrison, in her official capacity, from classifying, processing, or prosecuting Plaintiff's campaign-speech-related complaints under any process more severe than, or distinct from, the process applied to complaints against similarly situated attorneys not arising from judicial campaigns;
4. Enjoin the Bar, Doyle, and Bailey, in their official capacities, to designate and publish an ADA coordinator, adopt a respondent-side grievance procedure, and give Plaintiff's pending accommodation request the consideration required by 28 C.F.R. §§ 35.160(b)(2) and 35.164;
5. Enjoin Defendants to remove the notice described in paragraphs 42 through 45 and any successor notice, to cease its publication, and to declare its publication unlawful;
6. Award compensatory and punitive damages against Morrison, Doyle, and Bailey, and the John/Jane Doe official(s), in their individual capacities;
7. Award compensatory damages against The Florida Bar under Title II of the ADA (Count XI);
8. Declare that Rules 4-8.2(a), 4-8.2(b), 3-4.3, and 4-8.4(d), and the civility provision of the Oath of Admission, are unconstitutional as applied to

Plaintiff's campaign speech, and enjoin Morrison and Doyle, in their official capacities, from enforcing them against that speech (Count XII);

9. Award costs and fees under 42 U.S.C. § 1988; and
10. Grant such other relief as the Court deems just.

**VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the factual allegations of this complaint are true and correct to the best of my knowledge, except as to matters expressly alleged on information and belief, and as to those matters I believe them to be true.

Dated: October 20, 2026
Respectfully submitted,

/s/ Stephen Christopher Brown
Stephen Christopher Brown
509 S. Chickasaw Trail #286
Orlando, Florida 32825
(407) 956-2172
stephen@brownandrice.com
Plaintiff, Pro Se (Fla. Bar No. 43406)